OLD FOLKS HOME OF ST. LOUIS COUNTY, Missouri, a Corporation, Plaintiff-Appellant,

v.

SAINT LOUIS UNION TRUST COMPANY, a Corporation, and Emily Boulicault, Defendants-Respondents,

The Salvation Army, a Corporation, Defendant-Appellant.

No. 46000.

Supreme Court of Missouri, Division No. 1.

June 9, 1958.

Samuel B. Murphy, Harold S. Cook, Cook, Fairfield, Howard & Murphy, St. Louis, for Old Folks Home of St. Louis County.

G. A. Buder, Jr., and Richard O. Roberts, St. Louis, for appellant The Salvation Army.

Thomas S. McPheeters, Jr., John J. Goebel, St. Louis, for St. Louis Union Trust Co. and Emily Boulicault, Bryan, Cave, McPheeters & McRoberts, St. Louis, of counsel.

COIL, Commissioner.

The question is whether grantor by certain language in a trust agreement intended to exonerate either preresiduary or residuary beneficiaries or both from the payment of Missouri inheritance taxes otherwise imposed upon them by law.

■ On November 30, 1942, Mrs. Flora B. Lee, a widow, executed an inter vivos trust agreement with respondents, St. Louis Union Trust Company, a corporation, and Emily Boulicault as trustees. The trust was amended February 27, 1943, in a detail of no concern in the present case. Mrs. Lee died on December 7, 1947, leaving a will executed December 3, 1942, under which the above-named trustees were executors and whereby the trustees received the residuary probate estate. The trust funds held by the trustees at the time of Mrs. Lee's death were taxable in her decedent estate because she had retained a life income and the right to revoke. Mrs. Lee's gross probate estate amounted to

$68,861 and the trust fund value was $1,987,625.35, making a gross taxable estate of $2,056,486.35. The inheritance tax report showed $178,084.15 due as inheritance tax, indicating the amount of that tax due by reason of the particular property passing to each beneficiary under the will and trust. The executors used trust funds, as authorized, to pay the total inheritance tax due. The executors and trustees paid to the beneficiaries mentioned in Mrs. Lee's will and in the trust agreement the specific legacies and bequests without deducting any amount for Missouri inheritance tax or without collecting any such amount from the beneficiaries. The total inheritance tax so paid was $24,560.03. Inheritance tax was due on the legacy of one of the residuary legatees in the sum of $153,524.12 which the trustees had charged against the residuary estate but had not paid because the trust had not terminated at trial time.

Old Folks Home of St. Louis County, Missouri, a corporation, one of the residuary legatees, brought this action against the trustees and The Salvation Army, a California corporation, the other residuary legatee, for a declaratory judgment, by the first count of which plaintiff sought a judgment requiring the trustees to reimburse the trust estate in the sum of $24,560.03, the amount of inheritance tax due on specific legacies which had not been collected by the trustees, and by the second count of which plaintiff sought a judgment requiring the trustees to charge the entire sum of $153,524.12 against the residuary share of the defendant, The Salvation Army, thus relieving the share of plaintiff from any charge for Missouri inheritance tax.

Prior to and at the time of Mrs. Lee's death in 1947, a foreign charitable corporation was entitled to no exemption from Missouri inheritance tax by virtue of the provisions of Section 145.100 RSMo 1949 (amended, Laws 1953, p. 743, V.A.M.S., effective 90 days after May 31, 1953, by

enactment of a reciprocal provision exempting foreign charitable corporations provided the law of the other state exempts like Missouri corporations). By the same section, plaintiff was at all times exempt from Missouri inheritance tax.

Essentially, then, there are two facets to the question here: one, whether the trustees correctly paid the inheritance tax due on specific legacies and bequests; the other, whether the residuary estate should be divided into two equal parts and The Salvation Army then required to pay the full amount of the inheritance tax assessed against its residuary share, or whether the tax should be first deducted and the remainder divided in equal parts between Old Folks Home and Salvation Army.

Grantor's will made bequests of certain items of personal property with the remainder to be added to the assets of the trust estate. There was no tax clause in the will.

While there are two paragraphs of the trust indenture particularly involved, any construction of that language should and will be made in the light of the entire instrument considered from its four corners. Consequently, a general résumé of the provisions of the trust should be set forth.

Grantor provided that the trustees were to pay her $2,000 per month during her lifetime (additional sums under certain circumstances) and that, subject to her rights, the trustees were to make monthly payments to eight persons during grantor's lifetime. Upon grantor's death, after setting aside a "tax fund" (hereinafter to be more specifically discussed) and after setting aside a separate $200,000 fund to be used to make certain "periodical payments" to eleven named beneficiaries, the trustees were to make single payments to eighteen named donees. The trust was to terminate on the death of the last survivor of thirteen named persons. Upon termination, the trustees were to discharge any deficiencies in the single payments and then make three

specified payments totaling $20,000 to three beneficiaries (not important here). The remaining balance of principal and accumulated income was to be divided between Old Folks Home and Salvation Army.

More specifically, grantor provided that upon her death any accrued and undistributed income would be added to the principal and that thereafter the principal and income would be disposed of as follows:

"[Clause] Fourth. * * * [Section] A. Grantor believes that the assets of the Trust Estate are at this time and at her death will be sufficient to permit payment in full of all of the sums payable hereunder and hereinafter provided for, but due to conditions which are not now foreseen it is possible that the Trust Estate may be insufficient in value to permit payment in full of the gifts hereinafter provided for. Accordingly, as soon after the death of the Grantor as practicable, the Trustees shall set aside from the assets of the Trust Estate a fund sufficient in their judgment to provide for the payment of such Federal and State taxes as may become charges on the Trust Estate due to the death of the Grantor, either for gift, estate or inheritance taxes. Out of the remaining assets of the Trust Estate, the Trustees shall set aside a trust fund having a value, in their judgment, of Two Hundred Thousand Dollars ($200,000.00), which fund shall be held upon the uses and trusts as herein set forth and more particularly to make the following payments, hereinafter sometimes termed the 'periodical payments.'"

Then were listed ten beneficiaries, each to receive a monthly payment. The total of such payments was $1,188 per month. One beneficiary was to receive $1,000 outright.

Paragraph 12 of section A of clause Fourth provided: "Until such time as the payments hereinafter provided for under section B of this clause Fourth shall have

been made in full, the net income of the fund set aside for the payment of the foregoing periodical payments, to the extent, if any, by which such net income during any year exceeds the amount required to meet such payments, shall be added to the remaining assets of the Trust Estate available for the making of the payments hereinafter provided for under paragraphs 1 to 18 inclusive of section B of this clause Fourth. After said payments provided for in Section B shall have been made and until termination of the entire Trust Estate as hereinafter provided for, any of the net income of the Trust Estate exceeding that required to make the periodical payments above mentioned, shall be divided equally between the Old Folks Home of St. Louis County, Missouri, and the Salvation Army of Los Angeles, California."

Section B of clause Fourth provided: "Out of the remaining assets of the Trust Estate (after setting aside funds for the purposes aforesaid and to the extent hereinbefore provided for), the Trustees shall make the following payments without interest thereon: * * *." There then were listed eighteen individuals and corporations who were to receive amounts varying from $1,000 to $50,000 totaling $388,000.

Section C, clause Fourth, was: "After payment in full of the sums therein mentioned shall have been made under the provisions of the foregoing section B, or after funds shall be set aside for that purpose, the remaining balance of the assets of the Trust Estate shall be added to the fund set aside primarily for the purpose specified in section A of this clause Fourth."

Clause Fifth provided that the trusts were to terminate upon the death of the last survivor of the grantor and twelve named persons, and further provided that the trustees, however, might terminate the trust as to any beneficiary of a periodical payment by purchasing an insurance annuity for such individual, and said clause Fifth stated, as to such annuities, that: "In the purchase of any such annuities, the Trustees may,

in their discretion, provide for payments payable during the lifetime of the respective annuitants and for a guaranteed minimum payment, in which latter event any payments thereunder payable after the death of an annuitant shall be payable in equal shares to the ultimate beneficiaries of this trust, i. e., to the Old Folks Home of St. Louis County, Missouri and the Salvation Army of Los Angeles, California."

Clause Sixth provided that upon the termination of all the trusts, the trustees were to first pay to the persons under section B of clause Fourth any deficiencies in their payments theretofore on account of the failure of the trustees to make full payment due to the insufficiency of available assets; then to make payments totaling $20,000 to three charities, and that "the balance shall be divided in equal shares between the Old Folks Home of St. Louis County, Missouri, located at 711 South Kirkwood Road, Kirkwood, Missouri, and the Salvation Army of Los Angeles, California."

Clause Seventh provided that the periodical payments were to be paid from the first day of the month after grantor's death.

Clause Eighth was as follows: "It is recognized that upon the death of the Grantor, either the estate of the Grantor or the Trustees herein or both may become liable for inheritance, estate, transfer and succession taxes or some of such taxes, both Federal and State, which may be assessed against the estate of the Grantor or against the beneficiaries thereof or hereof or both. Accordingly, it is agreed that to the extent of such liability and to the extent that the estate of the Grantor subject to administration in the Probate Court is insufficient for such purposes, the assets of the Trust Estate shall be used to satisfy such obligations, whether by payment through the executors or administrators of the Grantor's estate or by direct payment by the Trustees to the authorities entitled thereto. For the purpose of determining the assets of the estate in probate administration available for the purpose of discharging such

taxes, there shall be excluded assets of the decedent estate to the extent required for payment of the expenses of administration and for payment of funeral expenses of the Grantor and the expenses of her last illness and for payment of claims proveable against the estate of the Grantor in the hands of the executors or administrators of her estate, and there shall also be excluded all personal belongings of the Grantor specifically devised by the provisions of her last will. As hereinbefore indicated, the Trustees are authorized, upon the death of the Grantor, to set aside, out of the assets of the Trust Estate, assets sufficient in their opinion to constitute a proper reserve for the payments required under this paragraph before setting aside the Two Hundred Thousand Dollars ($200,000.00) for the purpose of making the periodical payments provided for under section A of clause Fourth hereof and before making the specified payments provided for under section B of said clause Fourth, but pending the setting up of such reserve and the determination of the actual liabilities under this paragraph, and also before setting aside the Two Hundred Thousand Dollar ($200,000.00) fund or so much as may be available therefor, required under the provisions of section A of clause Fourth, the Trustees shall nevertheless begin making and continue to make the said periodical monthly payments unless and except to the extent that the Trustees affirmatively determine that the assets available therefor are such that such periodical payments cannot properly be made."

■ It is apparent that the two clauses which most directly affect the present questions are Fourth A and Eighth. Before analyzing their language, however, we should further note that the Missouri inheritance tax is levied upon the right to receive property and that the law specifically places the incidence or burden of that tax upon the recipient of the property, even though an executor or trustee is required to deduct the tax before transferring property or collect the tax thereon from the

person entitled to such property, and although the tax must be paid in the first instance by an executor, administrator, or trustee who is personally liable therefor to the state, §§ 145.120, 145.130 RSMo 1949, V.A.M.S.; Priedeman v. Jamison, 356 Mo. 627, 202 S.W.2d 900; and further, that a testator or grantor may change the statutory mandate by placing the burden of the inheritance tax some place other than upon the recipient of the property, but to do so the testator or grantor must evidence by his language a clear intention to shift the burden of the tax from where the law has placed it. Priedeman v. Jamison, supra.

The question then is, did Mrs. Lee, by the language contained in her trust indenture, particularly in clauses Fourth A and Eighth, evidence a clear intention to shift the burden of inheritance taxes from the preresiduary or residuary legatees of her property and thus free both or either of them from the payment of inheritance taxes?

■ Certainly clauses Fourth A and Eighth, considered together, dealt with taxes and specifically with inheritance taxes. It is also apparent, however, that grantor did not, in so many words and by the use of direct, clear language, state that it was her intention that all of her beneficiaries, including residuary beneficiaries, were to receive their legacies and bequests free of all taxes, or state in clear language that the residuary beneficiaries were each to receive one half the *net* residuary estate after inheritance taxes thereon had been paid. Consequently, it appears that if grantor has evidenced a clear intent to free any beneficiaries from payment of inheritance taxes, such an intent must be found as a necessary implication of the language grantor did use.

We have attempted to consider and analyze the language of clauses Fourth A and Eighth, harmonizing their provisions, and considering them in the light of all the other provisions of the trust, and wherever manifest, in the light of the purposes

and general scheme of the grantor and with the aid of the briefs and arguments of the parties. We have reached the conclusion that the grantor, by clauses Fourth A and Eighth, said in effect: that while she believed the trust assets were then and always would be sufficient to permit payment in full of all specific payments provided for in the trust instrument, nevertheless, because there must always be in contemplation the possibility that the trust assets would not be sufficient to pay each specific gift in full, grantor set forth a plan by which her desire that certain beneficiaries be preferred would be effectuated so that, in so far as possible, those preferred beneficiaries would receive immediately and continuously the full amounts provided for them in any and all events and whereby the other specific bequests would, if possible, be paid in full. The grantor then provided, as a part of an arrangement to give effect to her above-noted purpose, for her trustees to set aside sufficient (in their judgment) trust assets to constitute a reserve to provide for the payment of federal and state taxes, and further provided that the funds of such reserve should be used to satisfy the liability of grantor's executor and of grantor's trustees for such taxes, including Missouri inheritance taxes, as might be assessed against grantor's estate and against the beneficiaries of the trust, provided, however, that such reserve funds should be so used only after designated funds from grantor's probate estate had been first so used.

It seems to us important to recognize the above-noted fact that the tax language of both clauses Fourth A and Eighth was part of a plan and arrangement to accomplish grantor's purpose to assure, in so far as possible, that the "periodical payments" would begin immediately and that they and the other specific bequests would be paid in full to the named beneficiaries. That such was grantor's expressed purpose is clear. Clause Seventh provided that the periodical payments were to begin on the first day of the month following the grantor's death and clause Eighth provided that *pending* the setting up of the reserve for taxes mentioned in clause Fourth A and *prior* to having determined the tax liability under clause Eighth and *prior* to setting aside the $200,000 fund provided in clause Fourth A, the trustees *"shall nevertheless begin making and continue to make the said periodical monthly payments * * *"* (our italics); clause Fourth C provides that after the specific bequests in Fourth B have been *paid in full,* etc.; and clause Sixth provides that upon termination of all trusts the trustees first shall pay any deficiencies in the payments required by clause Fourth B due to temporary insufficiency of assets, so that the beneficiaries under clause Fourth B shall be paid in full. The decisive significance of the fact that setting aside a reserve for taxes was part of a plan to make as certain as possible that the "periodical payments" would begin immediately and that those donees and other specific beneficiaries would be paid in full is that *exoneration of preresiduary beneficiaries* from the payment of inheritance taxes was, of necessity, from a practicable standpoint at least, an essential part of the accomplishment of that plan.

That must be true for, as now seems apparent, unless the preresiduary beneficiaries were exonerated from the payment of inheritance tax, their payments could not certainly be made immediately or in full. As heretofore pointed out, Section 145.120, supra, provides in part that "Any * * * trustee having in charge or in trust any legacies, or property for distribution subject to the tax imposed by this chapter, shall deduct the tax therefrom if the transfer be in money * * *." Thus, unless the preresiduary beneficiaries were exonerated, the trustees were required to deduct the inheritance tax due from the first payments to be made to the periodical payees until that tax was paid in full and from the totals of the prescribed lump-sum gifts. Surely grantor did not intend to provide for immediate and continuous payments and payments in full and at the same time to make it necessary either that the trustees violate their direc-

tions in that respect or become personally liable for the inheritance tax which they, by immediate and full payment, would have failed to deduct or withhold as required by law.

■ While it is true that priority in payment does not necessarily indicate preference as to a tax burden, In re Kelly's Will, Sur., 86 N.Y.S.2d 441, 447 [7, 8], and "payment in full" does not necessarily mean a "payment free of tax," Sherman v. Moore, 89 Conn. 190, 93 A. 241, 242 [3], nevertheless when it appears, as it does in the instant case, that the accomplishment of grantor's clearly expressed purpose to provide for immediate and full payment to preresiduary beneficiaries depends, as a practicable matter, on whether those beneficiaries are exonerated from the payment of inheritance taxes, it clearly appears that the necessary implication of the language of the trust agreement is that grantor's intent was to provide for such exoneration.

■■ We have said that the rule is well established that a testator ·or grantor, in order to place the burden of inheritance tax some place other than upon the recipient of the property, must evidence in the written instrument a clear intent to so shift the tax burden, Priedeman v. Jamison, supra. Also well established, however, is the rule that the instrument in question must be construed as a whole to discover, if possible, testator's or grantor's *intent* and if, as we have found it does in the instant case, that intent clearly appears, it is to be given effect. Mercantile Trust Co. v. Kilgen, Mo., 298 S.W.2d 387, 390. We hold that grantor intended to exonerate the preresiduary beneficiaries from the payment of inheritance taxes and consequently that respondent trustee, as the trial court held, correctly paid the inheritance tax due on the specific legacies and bequests.

As we have stated heretofore, the second part of the instant controversy involves the question whether grantor intended also to exonerate the residuary beneficiaries or,

more specifically, whether the inheritance tax due on the gift to residuary beneficiary, The Salvation Army, a California corporation, should first be paid and the residue thereafter divided equally between Salvation Army and Old Folks Home or whether the gross residuary estate should be divided equally and each legatee thereafter pay whatever inheritance tax may be due on its legacy. Appellant Salvation Army insists that the same language of the trust instrument is involved as was construed in determining that the preresiduary beneficiaries were exonerated and that either it was "Mrs. Lee's intention * * * that all of her beneficiaries were to take tax free, by which we mean that inheritance taxes were to be borne solely by the specific fund carved out of the corpus of the trust estate, or it was her intention that none of them were to be free from the payment of Missouri inheritance taxes." And Salvation Army says also that it is "obvious that if the intent of the decedent is clear enough to exonerate any of the beneficiaries, it is clear enough to exonerate all of them."

We are unable to agree with Salvation Army's foregoing contentions for the reason that it does not necessarily follow that because grantor's intent to exonerate preresiduary beneficiaries clearly appears by necessary implication from grantor's language, the same language means or clearly implies also that grantor intended an equal net division rather than an equal gross division of the residuary estate. As we see it, the question on this aspect of the case is not in reality whether the residuary beneficiaries are *exonerated* from the payment of inheritance taxes, because those taxes had to come, in any event, from the residuary estate. Thus, even if the position of Salvation Army is correct, it is not *exonerated* from inheritance tax payment but, on the contrary, is liable (in the sense that its net share is reduced by one half the amount of the tax) for one half the total inheritance taxes ́ due on the gifts to the residuary beneficiaries. So that ·the question, as we see it, is whether the "tax lan-

guage" of the trust instrument clearly meant that all taxes due by reason of the residuary gifts were to be paid before the residue was divided as directed.

We have heretofore noted that grantor did not in so many words and by use of simple, direct language state her intention to exonerate *any* beneficiaries and we have held also that grantor intended that her *preresiduary* beneficiaries be exonerated only because exoneration was necessarily an essential part of grantor's clear purpose to provide for immediate and full payment. Thus, it appears that we need now determine whether equal net division between the *residuary* beneficiaries was also an essential part of grantor's expressed purpose and plan and, if not, whether there is any other language in the trust instrument clearly evidencing that grantor intended an equal division of the *net* residuary estate.

It seems apparent that whether the residuary beneficiaries were to receive equal gross shares or equal net shares of the residuary estate would have nothing to do with and could not by necessary implication be a part of grantor's plan or method to effect her intent to provide for the immediate and full payment of her preresiduary beneficiaries. On the contrary, it would appear that grantor's plain purpose in that respect has been fully accomplished when exoneration has been granted to the preresiduary beneficiaries.

Furthermore, it will be recalled that clause Fourth A of the trust agreement provided in part: "Grantor believes that the assets of the Trust Estate are at this time and at her death will be sufficient to permit payment in full *of all of the sums payable hereunder and hereinafter provided for* * * *." (Our italics.) Grantor then provided for the setting aside of a tax reserve as part of the arrangement to give effect to her intent for immediate and full payment "of all of the sums payable" thereunder. Under the circumstances, it seems abundantly clear that "all of the sums payable hereunder and hereinafter provided for" re-

ferred to the specific sums payable as pecuniary legacies to the preresiduary beneficiaries and did not refer to the gifts of the residue. Gifts of equal parts of the residue would not likely be described as "the sums payable hereunder and hereinafter provided for"; on the contrary, the residue and the residuary beneficiaries' proportionate shares thereof obviously consisted of whatever assets remained after "all of the sums payable hereunder and hereinafter provided for" had been paid to the designated preresiduary beneficiaries. And, in that connection, we are of the opinion that the word "payments" contained in this language of clause Eighth, viz., "As hereinbefore indicated, the Trustees are authorized, upon the death of the Grantor, to set aside, out of the assets of the Trust Estate, assets sufficient in their opinion to constitute a proper reserve for the payments required under this paragraph * * *," when construed in connection with the language of clause Fourth A, also referred to the tax "payments" on the gifts to preresiduary beneficiaries.

We are also of the opinion that grantor's language that "the balance shall be divided in equal shares between" Old Folks Home and Salvation Army does not disclose any clear intent to shift one half of Salvation Army's statutory inheritance tax burden to the other residuary legatee. "Equal shares" may mean "equal gross shares" or "equal net shares." "Equal shares" does not necessarily connote "equal tax burden." It was said in the case of In re Wahr's Estate, 370 Pa. 382, 387, 88 A.2d 417, 419 [3]: "Appellants maintain with vigor that testatrix 'otherwise directs in her will,' when she provides that her residuary estate be divided into *equal* shares and thus precludes tax proration under the act. An equal division of assets, however, does not necessarily mean an equal *tax* burden. For example: If a testator directed that his estate be divided into two equal shares, one of which he bequeathed to a child and the other to a collateral relative, could it be logically contended that the word 'equal'

also related to transfer inheritance tax? We think not."

It is our view that grantor did not clearly express an intention, either by explicit language or by necessary implication, that the inheritance taxes on the residuary gifts be paid and the net amount remaining be divided equally between the residuary beneficiaries. Certainly, it is not clear to us that grantor intended that the burden of the inheritance tax imposed by law upon the residuary gifts be so shifted as to deprive Old Folks Home of St. Louis County, Missouri, of the benefit of the exemption to which it otherwise is and was entitled under the provisions of Section 145.100, supra.

■ The instant case has been well briefed but, of necessity, as is always true in cases involving construction of wills and trust instruments, unless the cited cases contain clauses whose language is so similar as to be in effect the same language in question, the authorities are valuable only as stating general rules and principles. Most, if not all, of the cited cases and many more have been collected in an annotation in 37 A.L.R.2d 7–149 under the title, "Construction and effect of provisions of will relied upon as affecting the burden of taxation." There is no Missouri case on the instant question. No purpose could be served by analyzing the cited cases from other jurisdictions because in the final analysis the question is whether we find in instant grantor's language a clear intent to shift the burden or part of the burden of the inheritance tax on the gift to Salvation Army from it, where that burden is by law, to Old Folks Home, which, by law, is and was exempt from inheritance tax. Finding no such clear intent, it follows that the trial court correctly held that the entire inheritance tax due should be charged against the residuary share of The Salvation Army.

The judgment is affirmed.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.