850 S.W.2d 76 (1993)
In the ESTATE OF Mary L. BODER, Deceased.
AMERICAN NATIONAL BANK OF ST. JOSEPH, Personal Representative, Respondent,
v.
ALBRECHT ART MUSEUM, et al., Ralph O. Stauber, Jr., et al., Unknown, Unborn & Minor Descendants of Ralph Stauber, and Ralph O. Stauber, Appellants.
No. 75116.
Supreme Court of Missouri, En Banc.
March 23, 1993.
*77 Fairfax Jones, Mark A. Brittingham, Ralph O. Stauber, Sr., Robert O. Snyder, St. Louis, for appellants.
John P. Beihl, St. Joseph, for respondent.
COVINGTON, Judge.
American National Bank of St. Joseph, as Personal Representative and Trustee of Mary L. Boder, deceased, filed a Petition for Declaratory Judgment in the Circuit Court of Buchanan County, Probate Division. The Bank sought a declaratory judgment ordering the payment and apportionment of the United States estate tax and other death duties by the Personal Representative. The Bank sought to determine whether the death duties should be paid entirely by the Stauber Family Trust or paid in equal shares by the Stauber Family Trust and a Charitable Trust established by the decedent. The trial court ordered that the Stauber Family Trust bear the entire burden of the death duties. The Stauber family appealed. The Missouri Court of Appeals, Western District, affirmed. This Court granted transfer to clarify the process for finally assessing the burden of estate taxes. Reversed and remanded.

I.
On July 31, 1981, Mary L. Boder, as grantor, executed an intervivos trust agreement. On the same date Ms. Boder executed her Last Will and Testament. She named The American National Bank of St. Joseph as trustee of the trust and personal representative under the will. Albrecht Art Museum is a specific devisee named in the will. The trust is the residuary devisee under the will. Within the trust, Ms. Boder established a Family Trust for the benefit of Ralph O. Stauber, Sr., and his descendants and a Charitable Trust for the benefit of various charitable entities. Ralph O. Stauber, Sr., (Stauber) is *78 Mary L. Boder's only surviving sibling. Alice Anne Stauber (now deceased), Ralph O. Stauber, Jr., and John N. Stauber are Stauber's children. Lauren Stauber, Jennifer Stauber, Ralph Stauber, III, and Tess A. Baklor are Stauber's grandchildren.
Ms. Boder died on July 6, 1988, not survived by any descendants. She left a probate estate of $4,246,657.10 and trust assets valued at $817,539.51. The decedent's total taxable estate was $5,064,196.61. The American National Bank paid entirely from the probate estate the federal estate tax of $806,558.64 and the Missouri estate tax of $160,210.77.
American National Bank, as personal representative and trustee of Mary L. Boder, deceased, filed a Petition for Declaratory Judgment in the Circuit Court of Buchanan County, Probate Division, seeking a judgment ordering the payment and apportionment of the United States estate tax and other death duties by the personal representative. The Bank sought to determine how to apportion the federal and estate taxes among the beneficiaries of Mary Boder's taxable estate. If the taxes were paid as a general expense of the estate, then the ultimate burden of the taxes would be borne more or less equally by the family and the charitable portions of the Trust. This was the position advocated by the Stauber family, beneficiaries of the Family Trust. On the other hand, the charitable beneficiaries advanced the argument that all taxes were generated by the non-charitable transfers, and that none of the taxes were generated by the charitable transfers, which were taken as deductions in the tax calculations. The charitable beneficiaries therefore advocated that the non-charitable beneficiaries should bear all of the tax. The court applied the doctrine of equitable apportionment. The court determined that the $967,000 tax burden should be paid entirely from probate assets that otherwise would be distributed to the Family Trust for the benefit of Ralph Stauber and his descendants, leaving the Charitable Trust exonerated.

II.

A.
The Internal Revenue Code, Section 2002, imposes the estate tax liability on the personal representative of an estate. I.R.C. § 2002 (Supp.1991). Code Section 2205 allows for reimbursement to a person (other than a personal representative) for estate taxes paid by him or her. I.R.C. § 2205 (1988). Sections 2002 and 2205 merely determine the initial method of paying the tax; they do not determine the "ultimate liability" for the tax. United States v. Melman, 398 F.Supp. 87, 92 (E.D.Mo.1975). The ultimate thrust of the tax and who should bear the burden of it should be determined under state law. Riggs v. Del Drago, 317 U.S. 95, 98, 63 S.Ct. 109, 110, 87 L.Ed. 106 (1942); Carpenter v. Carpenter, 364 Mo. 782, 267 S.W.2d 632, 637 (1954).
Missouri has no apportionment statute for determination of the ultimate burden of federal estate tax. Nor has the General Assembly provided a means for determination of the ultimate burden of Missouri estate tax. Liability for the Missouri inheritance tax was initially imposed upon, and taxes were primarily required to be paid by, the executor of the estate. § 145.120, RSMo.1978 (repealed 1980). The inheritance tax was charged against and was directly recoverable from the person or entity entitled to the property. Id. By contrast, the Missouri estate tax, which is a levy upon the transfer of the entire estate upon death without reference to the identity of the successors in interest, does not provide for direct apportionment of liability for the taxes due. § 145.051, RSMo.1986.
In the absence of a statutory provision for determination of the ultimate burden of estate taxes, Missouri courts look first to the decedent's testamentary instruments to discern the decedent's intent. Commerce Trust Co. v. Starling, 393 S.W.2d 489, 494 (Mo.1965). Where the testator fails to express his or her intent, the court applies equitable principles in determining the ultimate burden of death duties. Hammond v. Wheeler, 347 S.W.2d 884, 890 (Mo.1961). The doctrine of equitable *79 apportionment places the burden of the federal estate tax on the property that generates the tax and exonerates from the burden the property which does not. Jones v. Jones, 376 S.W.2d 210, 212 (Mo. banc 1964).
In determining the grantor or testator's intent, the instrument or instruments in question must be construed as a whole. If the grantor or testator's intent clearly appears, it is to be given effect. Old Folks Home of St. Louis County v. St. Louis Union Trust Co., 313 S.W.2d 671, 678 (Mo.1958). The finding of an ambiguity necessitates judicial construction for the purpose of determining the testator's directive, if possible, before application of equitable apportionment. Id. Provisions are to be harmonized when possible and construed in the light of the purposes and general scheme of the grantor and testator. Id. at 676-77.[1]

B.
The issue is how to apportion the federal and state estate taxes under the terms of Mary Boder's Will and Trust. Appellants claim that the trial court erred in applying the doctrine of equitable apportionment and assessing the burden of the federal and Missouri estate taxes to be paid out of the Family Trust, thereby relieving the Charitable Trust from sharing in the tax burden. Appellants claim that the burden of the federal and state estate taxes should be divided equally between the Family Trust and the Charitable Trust. Respondents in the first instance claim that there is no ambiguity in the provisions that speak to payment of death taxes and that Mary Boder clearly instructed the payment of the entire death tax obligation out of the Family Trust. After claiming clear evidence of Mary Boder's intent, respondents nevertheless also urge application of the doctrine of equitable apportionment. No deference need be given to the trial court's judgment in this case because the sole question is the construction of the documents based upon the language they employ.
This Court finds that Mary Boder's testamentary documents may be construed two ways. One of the constructions renders some of the provisions of the documents meaningless, while the other places the provisions in harmony. Reading the provisions in harmony leads to the conclusion that Mary Boder intended the burden of the federal estate tax to fall equally on the two trusts.
Four articles of the testamentary documents relate to payment of estate taxes. Article III of the Will provides that estate taxes may be paid from the Trust (therefore, according to the terms of the Trust) or may be paid from the probate estate.
Article I of the Trust grants the Trustee the power and authority to pay, compromise, settle, compound, adjust or abandon all claims and demands, including the payment of all United States estate tax and state inheritance and estate taxes that may be assessed against the estate of Mary Boder, regardless of whether or not the assets so subjected to a liability for death duties are a part of the trust estate.
The real dispute between the parties centers on Articles 4.A and 4.D of the Trust, which provide in pertinent part as follows:

Article 4.ATrust
The Trustee, after the death of Settlor, in accordance with provisions of ... this Agreement, is authorized and directed out of the assets of said Trust, to pay, settle, compromise and adjust any and all debts of the Settlor that remain unpaid *80 at the time of Settlor's death; all United States Estate Tax, state inheritance and estate taxes assessed by law against the estate of Settlor, regardless of whether or not the assets so subject to a liability for death duties are a part of this Trust Estate; all expenses of administration in the estate of Settlor; and other charges imposed by law upon said estate. The Trustee is then authorized and directed to divide the balance of said Trust Estate into two equal parts, the first part to hereinafter be designated as The Family Trust....

Article 4.DTrust
After the death of Settlor and after all debts, expenses of administration, United States Estate Taxes, Missouri Inheritance and Estate Taxes, and other charges or taxes imposed by law upon Settlor's Estate are finally determined and paid, or after assets of The Family Trust of sufficient value have been set apart and reserved for the payment of such charges, and after all of the foregoing distributions have been made or funds set aside to pay them, the Trustee of the Family Trust is authorized, empowered, and directed to pay over and distribute the net income and principal thereof as follows: ....
Article 4.A of the Trust authorizes and directs the Trustee out of the assets of the Trust to pay all United States estate tax, state inheritance and estate taxes assessed by law against the estate of the settlor, then to divide the balance of the Trust estate into two equal parts, the first of which is designated as the Family Trust. Article 4.A clearly directs payment of taxes before the trust assets are divided between the Family Trust and Charitable Trust, having the effect that each trust bears the ultimate tax burden equally.
Article 4.D provides that after the death of the settlor and after all taxes are finally determined and paid, or after assets of the Family Trust of sufficient value have been set apart and reserved for the payment of such charges, the trustee is authorized and directed to pay over and distribute the net income and principal according to the subsequent terms of the trust.
Respondents emphasize the language of Article 4.D of the Trust, "after assets of the Family Trust ... have been ... reserved for payment" [of taxes]. Respondents claim this language evidences clear intent to have estate taxes paid from the Family Trust. By this construction respondents seek to have this Court read portions of Article 4.D in a vacuum and view Article 4.A as meaningless.
Rather than to read Articles 4.A and 4.D so as to render Article 4.A meaningless, the provisions at issue must be construed to harmonize them, if possible, looking to the four corners of the testamentary instruments to determine the intent of the testator. Commerce Trust Co. v. Starling, 393 S.W.2d at 494. The provisions can be harmonized if Article 4.D is read as a direction by the grantor as to the timing of distributions to family members.
Review of the subsections of Article 4 assists in understanding Mary Boder's entire testamentary plan. Article 4.A first designates The Family Trust. In Article 4.A the Trustee is directed promptly upon creation of the Trust to distribute and pay over to each of the decedent's nephews and the decedent's niece the sum of $10,000. Article 4.B makes a specific bequest of $10,000 to Mrs. Robert Clark. Article 4.C makes a bequest of $10,000 to Ralph O. Stauber, Mary Boder's brother.
Article 4.D follows. The language in Article 4.D refers specifically to assets of "`The' Family Trust," evidencing that the Family Trust is previously established in Article 4.A, rather than newly established in Article 4.D. Subsection 1 of Article 4.D addresses the needs of Ralph O. Stauber, Sr., Mary Boder's brother. It is clear that the principal purpose of the Family Trust is to provide for Ralph O. Stauber, Sr. Subsection 1 of Article 4.D provides:
If, at any time, in the absolute discretion of the Trustee, said brother (Ralph Stauber, Sr.) should for any reason be in need of funds for said brother's support and maintenance upon the same standard of living which said brother enjoyed at the *81 time of the Settlor's death, or for extraordinary medical expenses or to meet educational expenses for the descendants of said brother, the Trustee may pay said brother or apply for his benefit, in addition to the income payments hereinabove provided for, such amounts from principal of the trust as the trustee may, from time to time, deem necessary or advisable for the use and benefit of said brother.
Any of the net income of the Trust not paid to Ralph Stauber may be paid, in the Trustee's discretion, for the benefit of Stauber's living descendants. There is no provision for encroachment upon the principal for the benefit of the descendants.
Subsection 2 of Article 4.D then provides that upon the death of Ralph O. Stauber, Sr., the Trustee of the Family Trust is authorized to value all of the assets remaining in the Family Trust at the fair market value and to divide the assets into two equal parts, one of which is further divided into shares for descendants of Ralph O. Stauber, Sr. After additional directions to the Trustee with respect to distribution to the Stauber descendants, Article 4.H then finally provides that the other one-half of the Family Trust assets shall be distributed and paid over to the Mary Boder Charitable Trust, created in the next article of the Trust Agreement.
The clause in Article 4.D upon which respondents so heavily rely fulfills an important element of Mary Boder's testamentary plan. The central purpose of the Family Trust is to provide for Mary Boder's brother, Ralph O. Stauber, Sr.; Article 4.D(1) allows the Trustee, in its discretion, not only to use the income of the Trust but also to encroach upon the principal of the Trust to care for Mr. Stauber. Whether Mr. Stauber might need care immediately upon the death of Mary Boder was unknown to her at the time she executed the testamentary documents. The federal estate and Missouri estate taxes were not due for at least nine months after Mary Boder's death. I.R.C. § 6075(a) (1988); § 145.511, RSMo.1986. Mary Boder's purpose to provide for Mr. Stauber could be defeated, at least temporarily, if the Trustee were required to wait until all estate taxes and other charges of the estate were paid. Article 4.D provides flexibility to the Trustee, permitting distribution to Mr. Stauber or for his benefit before the taxes have been paid, so long as the Trustee reserves sufficient Family Trust assets to pay its share of the taxes.
In the absence of the clause requiring reservation of assets to pay taxes, the Trustee could conceivably distribute the entire Family Trust for Mr. Stauber's care before the taxes were due or paid. Article 4.D, however, allows the Trustee to distribute the Family Trust assets to care for Mr. Stauber only after the Family Trust's share of the taxes are paid or funds are reserved to pay them. The reservation of assets neither requires the Family Trust to bear the entire tax burden, nor confuses the clear plan set forth in Article 4.A.
No similar provision relating to administration of the Charitable Trust was necessary because the Trustee was not authorized to encroach upon the Charitable Trust principal pending administration of the estate. Article 5.C provides that only the income of the Trust shall be distributed annually. The entire principal amount of the Charitable Trust, therefore, would always be available to bear its share of the tax burden, regardless of when the taxes are paid.
The language of Article 5.A, which establishes the Mary Boder Charitable Trust, reinforces the propriety of a construction that harmonizes Article 4.D with Article 4.A. Article 5.A provides in pertinent part:
All of the assets of said Trust [the intervivos trust] including any undistributed income not distributed to the Family Trust under authority of Items 4A and under Item 4G [4H] shall be set apart and treated as a separate trust designated as the "Mary Boder Charitable Trust" with all the powers and authority set forth under Item I of this Agreement.
Article 5.A makes specific reference to Article 4.A. It is Article 4.A that clearly directs the Trustee to pay all estate taxes, then to divide the balance of the Trust *82 Estate into two equal parts. Article 5.A, therefore, contemplates specifically that the Trustee will have acted under 4.A, thus evidencing Mary Boder's intent that the Charitable Trust be created only after the estate taxes are paid from the intervivos trust pursuant to Article 4.A.
In summary, Articles 4.A and 5.A of the Trust document direct the Trustee to establish two trusts from the intervivos trust after the Trustee pays estate taxes, a Family Trust and a Charitable Trust. Article 4.D gives the Trustee discretion to invade principal and income of the Family Trust to support the beneficiary Ralph O. Stauber, Sr., either (1) when all of the estate taxes have been paid, or (2) when the Trustee sets aside from the Family Trust a portion of the Trust to insure payment of the portion of the estate tax attributable to the Family Trust. This reading of the documents places in harmony the relevant provisions of the Trust and provides for the payment of the estate taxes from the intervivos trust estate while giving discretion to the Trustee to invade the principal of the Family Trust for the benefit of Ralph O. Stauber, Sr., before the estate taxes are actually paid.
Because Mary Boder directed that the ultimate burden of estate tax should be paid in equal shares by the Stauber Family Trust and the Charitable Trust, the judgment of the trial court must be reversed. The cause is reversed and remanded for assessment of the burden of estate taxes in a manner consistent with the holding of this opinion.
All concur.
NOTES
[1] Language in Estate of Schuette v. Friedrich, 620 S.W.2d 455, 456 (Mo.App.1981), seems to suggest that the court may afford a presumption that equitable apportionment applies absent a clear expression to the contrary in the will. Schuette cites In re Estate of Wahlin, 505 S.W.2d 99, 106 (Mo.App.1973). In Wahlin, however, the court construed the document in question to determine whether the testator had clearly or by implication expressed an intent as to where the ultimate burden of the estate tax should fall. Wahlin, 505 S.W.2d at 108. The teaching of the cases is that courts will follow the doctrine of equitable apportionment only when the testator's intent cannot be determined. Commerce Trust Co. v. Starling, 393 S.W.2d at 494; Love v. St. Louis Union Trust Co., 497 S.W.2d 154, 158 (Mo. banc 1973).