Marie **GELLERSTEDT**, Appellant,

v.

**UNITED MISSOURI BANK OF KANSAS CITY, N.A.**, Respondent.

No. WD 46341.

Missouri Court of Appeals,
Western District.

Sept. 7, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 2, 1993.

Application to Transfer Denied
Dec. 21, 1993.

Clem W. Fairchild, Fairchild Stang Beal Barber & Sanders, P.C., Kansas City, for appellant.

Christopher S. Gahagan, Kuraner & Schwegler, Kansas City, for respondent.

Before SMART, P.J., SHANGLER, Senior Judge, and FENNER, J.

SMART, Presiding Judge.

This appeal presents, as an issue of first impression, the issue of whether Missouri law applies as to the allocation of the federal estate tax burden when a decedent's will was executed in Kansas and the decedent died in Missouri. Plaintiff Marie Gellerstedt appeals from the trial court's judgment applying Kansas law, causing the burden of the estate tax to fall on the residue of the estate.

The judgment is reversed and the case is remanded to the trial court for further proceedings.

Ada LaFrenz ("Decedent") died testate on November 22, 1988, while residing in a nursing home in Jackson County, Missouri. She had executed her will seventeen years earlier while domiciled in Johnson County, Kansas. Three years after the will was executed, she executed a codicil. At the time the codicil was signed, she remained domiciled in Johnson County, Kansas. These documents were executed in 1971 and 1974 respectively.

On May 8, 1979, Mrs. LaFrenz was moved from her home in Kansas to a nursing home in Kansas City, Missouri by a family mem-ber. Two days later decedent's nephew, Roy Moore, petitioned the probate court for the appointment of a guardian for the person and estate of decedent. On June 5, 1979, Mrs. LaFrenz was adjudicated incompetent by the probate court, and guardians were appointed. Mrs. LaFrenz remained a resident of the nursing home in Missouri nine years until her death.

Both decedent's will and codicil are silent as to the allocation of the burden of the state and federal taxes. Decedent's gross taxable estate amounted to $3,266,263.18. Her total tax liability amounted to $1,184,028.30, which included federal estate taxes of $977,811.57, Missouri estate taxes of $168,279.85, and Iowa inheritance taxes of $37,936.98. Decedent's gross taxable estate included the assets of her probate estate valued at $1,945,977.31 and her interest in a marital trust established by her late husband (apparently valued at approximately 1.3 million dollars), as to which she had a power of appointment.

Mrs. LaFrenz's will made certain specific bequests amounting to approximately $65,000 in cash. Her will also included a specific bequest of a lot at the Lake of the Ozarks, her jewelry, and country club memberships. After making the specific bequests, the will made the following residuary bequests: (1) fifty percent of decedent's residuary estate up to a maximum of $200,000.00 to be distributed to her nephew, Roy Moore; and (2) fifty percent of decedent's residuary estate and any excess over the maximum gift to Roy Moore to be distributed to Marie Gellerstedt, decedent's niece.

In early 1990, the federal estate taxes were paid and United Missouri Bank of Kansas City ("the Bank") thereafter made distributions to specific distributees under the will without deducting a pro rata portion of the estate tax liability. The Bank also made a distribution of the sum of $200,000 to Roy Moore.

On March 1, 1991, Plaintiff Gellerstedt filed her petition for declaratory judgment requesting that the trial court find that the federal estate tax liability should have been prorated among recipients under the will in proportion to the amount of property each received, rather than imposed on the resi-

due.[1] Plaintiff sought an order from the court declaring that Defendant Bank was liable to plaintiff in an amount equal to the collective taxes attributable to the distribution of $278,500 made to specific distributees by the Bank. On cross-motions for summary judgment, the trial court concluded that Kansas law governed the allocation of the tax liability, and that Kansas law causes the tax burden to fall on the residue. The court found that therefore it was not necessary to allocate the tax burden pro rata, and granted summary judgment in favor of Defendant Bank. Plaintiff Gellerstedt appeals from this judgment.

### Allocation of Tax Burden

Internal Revenue Code § 2002 (imposing federal estate tax liability) and § 2205 (allowing reimbursement to a distributee for estate taxes paid by the distributee) merely determine the method of tax payment. They do not determine the "ultimate liability" for the tax which is determined according to state law.[2] *Riggs v. Del Drago,* 317 U.S. 95, 63 S.Ct. 109, 87 L.Ed. 106 (1942).

> The intent of the federal estate tax is that it shall be paid out of the estate before distribution, but the federal statute does not designate out of what fund the tax is payable. It is intended that state law determine the ultimate thrust of the tax and who is to bear the burden.

*In re Estate of Nease,* 643 S.W.2d 97, 100 (Mo.App.1982). A testator may provide for payment of estate and inheritance taxes from a specific fund in his or her will if testator so desires. *In re Estate of Boder v. Albrecht Art Museum,* 850 S.W.2d 76, 78 (Mo. banc 1993). However, when no provision for the payment of estate and inheritance taxes is made in the will or subsequent codicil to the will, the probate court must look to state law for the appropriate tax allocation. *Id.; Car-*

*penter v. Carpenter,* 364 Mo. 782, 267 S.W.2d 632, 637 (1954). Missouri has no statute concerning the allocation of the burden of estate taxes. Missouri has adopted the rule of "equitable apportionment" for the payment of estate taxes when there is no clearly expressed intention of the testator as to where the burden should fall. *Carpenter,* 364 Mo. 782, 267 S.W.2d at 637; *Nease,* 643 S.W.2d at 100; *In re Estate of Johnson,* 803 S.W.2d 619, 620 (Mo.App.1990). Kansas, on the other hand, follows the "burden on the residue" rule which imposes the entire tax burden on that part of the estate which remains after the making of any specific bequests.[3] *In re Estate of West,* 203 Kan. 404, 454 P.2d 462, 465 (1969).

### Intention of the Decedent

In determining the allocation of the estate tax burden, careful attention should be given, first of all, to a thorough examination of the will or trust. *Boder,* 850 S.W.2d at 78. Ordinary principles of construction, such as the principle that an attempt should be made to harmonize all provisions of the instrument, should be applied. *Id.* If the decedent's intent can be discerned from the instrument, such intent should be given effect. *Id.; In re Estate of Wahlin,* 505 S.W.2d 99, 198 (Mo. App.1973). In *Boder,* the testator created a substantial charitable trust along with a trust for family members. Although the rule of equitable apportionment would ordinarily have exempted a decedent's charitable trust from the tax burden, the court held that careful interpretation of the will showed the intent that the charitable trust and the family trust should bear the burden equally. Therefore, the court did not exempt the charitable trust from the burden of the tax. Accordingly, the courts should allocate the burden according to whatever intent can be de-

---

**1.** Plaintiff Gellerstedt has voluntarily waived any attempt to recover a pro rata share as to certain beneficiaries. She seeks recovery for amounts distributed to Roy Moore, Larry Moore, and the personal representative of the estate of Marie Kaufman, his deceased sister.

**2.** The Internal Revenue Code addresses the allocation of the tax burden only in specific instances. *See* §§ 2206, 2207, 2207A and 2207B. The

only provision which appears applicable to this estate is § 2207, which deals with the allocation of the burden as to recipients of property over which the decedent had a power of appointment.

**3.** Kansas has a statute which provides, as to *state inheritance taxes,* for equitable apportionment. K.S.A. 79–1564(d) (1989). There is no statute as to federal estate tax allocation.

termined from the instrument, applying principles of construction and sound logic. If no intent can be discerned from the instrument, then it becomes simply a matter of application of the appropriate law.

### Differences in State Law

For the first twenty-five years after the enactment of the federal estate tax in 1916, most courts assumed the burden of the federal estate tax should fall on the property which bears the other debts and expenses of the decedent's estate—the residue. *Wahlin,* 505 S.W.2d at 104. This was partially because of the widespread belief that Congress intended that the burden of the tax fall on the residue. *Id.* In 1942, the United States Supreme Court in *Riggs v. Del Drago,* 317 U.S. 95, 63 S.Ct. 109, 87 L.Ed. 106 (1942), declared that Congress intended that the matter should be settled by state law. Since that time, many states have adopted, by statute or judicial decision, a rule of equitable apportionment, in which all of the property which forms the taxable estate (whether or not part of the probate estate) bears the burden of the tax proportionately. While the trend is toward equitable apportionment, the Kansas "burden on the residue rule" is still considered the majority rule. *Carpenter,* 267 S.W.2d at 639–40; *see Annotation, Ultimate Burden of Estate Tax in Absence of Statute, Will or Other Provision,* 68 A.L.R.3d 714 (1976). At least thirteen states have adopted equitable apportionment by statute, adopting the Uniform Estate Tax Apportionment Act, which provides for equitable apportionment. *See* 8A Unif.Laws Ann.; Bogert, Trusts and Trustees § 286.5 (Rev.2d Ed.1992). Critics of the "burden on the residue" rule point out that the rule is arbitrary and often defeats the will of the typical testator in that it puts the greatest burden on the very persons who are most likely to be the residuary legatees—the testator's family. They also argue that since the taxable estate may often include much property outside the probate estate, including transfers before death, that the "burden on the residue" rule may work a great injustice in some cases. *See, e.g., Succession of Jones,* 172 So.2d 312 (La.App. 4th Cir.1965), *cert. denied,* 247 La. 718, 174 So.2d

131 (1965); *New York Trust Co. v. Doubleday,* 144 Conn. 134, 128 A.2d 192 (1956).

### *Missouri's "Equitable Apportionment" Rule*

■ Where the will or other estate planning document does not express the testator's intent, the general rule in Missouri is that the principle of equitable apportionment is applied, placing the burden proportionately on the property subject to taxation. *Carpenter,* 267 S.W.2d at 637. *Wahlin,* 505 S.W.2d at 106. The cases have specified that, in order to avoid application of the rule of equitable apportionment, the intention to burden the residue must be "clearly expressed in the will." *Wahlin,* 505 S.W.2d at 107–108; *Boatmen's Union Nat'l Bank v. Welton,* 640 S.W.2d 497, 500 (Mo.App.1982). Equitable apportionment is not based upon the notion of the "intent" of any given testator; rather, it is based upon equitable principles. *Wahlin,* 505 S.W.2d at 112.

■ Since the parties agree that in this case no intention of the deceased was expressed as to the burden of estate taxation, the only issue submitted on appeal is whether the fact that the will in question was executed while Mrs. LaFrenz resided in Kansas should cause the *Kansas* rule rather than the *Missouri* rule to be applied as to allocation of the burden. Appellant argues that the fact that the will is a Kansas will should make no difference. A Kansas will which makes no reference to taxes, appellant argues, is not materially different for our purposes from a Missouri will which makes no reference to taxes. Appellant argues that there is nothing to construe since there is no ambiguity, either patent or latent. Thus, there is no mystery concerning the intention of the decedent. It is simply a matter of applying the appropriate law. Appellant argues that the law of the state of domicile at death should be applied to the question of the burden of the federal estate tax. The trial court, however, concluded that the domicile at death was immaterial, and that the law of the state in which the will was executed should control the burden. This ruling was based upon the assumption that the testator considered the effect of Kansas law when the instrument was executed, and therefore "in-

tended" that the Kansas "burden on the residue" rule be applied. Since there is no authority in this state directly on point, this conclusion will be examined in the light of applicable principles of law. The objective of our deliberations is to consider whether the ruling of the trial court should be affirmed as a rule of law of general applicability.

There are two ways urged by the parties as proper ways to decide the issue. There is the way the trial court decided it—to rule that because the will is silent as to the entire subject of taxes, we may infer an "intent" to adopt the law of the state of domicile at the time the will was executed, just as though such intent had been spelled out in the instrument. There is also the resolution urged by the appellant—a ruling that it is not appropriate to infer anything about the intention of the testator when there is no evidence that the subject of the burden of estate taxation was even considered by the testator.

*Determination of Intent v.*
*Application of Law*

The trial court relied upon authorities stating that the intention of the testator is determined by reference to the law of the testator's domicile at the time the will was executed. *E.g.,* Thompson, Construction of Wills § 15, at 17; Alexander, 1 Commentaries on Wills § 272, at 334 (1970). Various Missouri authorities seem to be in agreement. *Easter v. Ochs,* 837 S.W.2d 516 (Mo. banc 1992); *Estate of Stellwag v. Kennedy,* 817 S.W.2d 466 (Mo.App.1990); *Estate of Petit v. Levine,* 657 S.W.2d 636 (Mo.App.1983). In contrast, however, certain other authorities seem to take a different position. "In case of change of domicile, the law of [the testator's] domicile at his death has been said to control as to construction." 6 Page on Wills § 60.10 at 466 (rev. ed. 1962).

When a judicial opinion or a legal treatise states the proposition that the "law assumes that a will is drafted with the law of the domicile in mind," it is often a comment on the law to be applied as to the disposition of a specific item of property owned by the testator outside of the testator's domicile. These are not cases involving a change of domicile after the execution of the will.

These are cases which hold the law of the domicile at death to be applicable, even though the property was located in another state. *E.g., Zombro v. Moffett,* 329 Mo. 137, 44 S.W.2d 149 (1931); *Estate of Buckley,* 677 S.W.2d 946 (Mo.App.1984). In other cases in which the principle is announced, it is done so as a comment on the law to be applied in determining the interpretation of a particular phrase expressed by the testator in his will where more than one jurisdiction, or more than one point in time, is involved. *E.g., Jones v. Park,* 282 Mo. 610, 222 S.W. 1018, 1022–1023 (1920) ("die without issue"); *Applegate v. Brown,* 344 S.W.2d 13, 16–17 (Mo. 1961) ("my relatives"); *Easter v. Ochs,* 837 S.W.2d 516 (Mo. banc 1992) ("heirs of the body").

■ Missouri courts apply foreign law as to the estate of a Missouri domiciliary in instances in which it is necessary to ascertain the testator's intention with regard to particular items of property which are part of the estate. *E.g., Estate of Stellwag v. Kennedy,* 817 S.W.2d 466 (Mo.App.1990) (issue whether testator intended liens to be discharged prior to distribution of property). In this case, however, where the parties acknowledge no intent can be discerned from the instrument, and there is no reason to believe that she had an intention as to the burden of federal taxation, there is no need to ascertain Mrs. La-Frenz's intention. It is a matter of imposing the applicable law. There is no latent ambiguity. *Estate of Johnson,* 803 S.W.2d 619, 620 (Mo.App.1990). Moreover, there is no disposition in her will which raises the question of her intent as to particular property or particular beneficiaries.

There are sound reasons to apply the law of the domicile at death when the will is silent as to the burden of taxation, regardless of the state in which the will was executed. It is neither necessary nor appropriate in this case to engage in the fiction that the testator actually considered the allocation of the burden and had an "intent" as to the burden. It is one thing to say that the meaning of words used by the testator are to be *interpreted* in accordance with the laws in effect at the time the will is made; it is another thing to say that the laws *applicable*

to the administration of the estate will be the laws in effect at the time the will was made.

It would make little sense to adopt in this case a rule that the failure to specify the allocation of the burden is equivalent to an *intention* to adopt the law of the state of execution of the will. The state of Kansas, for instance, after the execution of Mrs. La-Frenz's codicil, could have chosen to adopt equitable apportionment for estates in which no contrary specification is made in the will (which many states have done). In order to be consistent, then, we would be required to apply Kansas law as of 1974 (the burden on the residue) as opposed to the law after the change (equitable apportionment). But if a codicil were executed after the law changed, and if it also were silent as to taxation, then the question would be whether her silence *after* the change in the law should be considered an intention to adopt the law as to the burden of taxation in effect at the time of the *codicil*. It seems anomalous to suggest that every time there is a new document which is silent as to the subject, there is a new "intent" to adopt the then current law as to allocation of the burden.

■ When individuals move from one state to another, and establish a domicile in the second state, they subject themselves to the laws of the state to which they move. They submit themselves to laws of state inheritance and estate taxes and laws affecting estate administration as well as other laws. A will executed in state A, and valid under its laws, may be found invalid as to certain property under the disparate requirements of state B. Scott, Scott on Trusts § 589 (4th ed. 1989); *see* § 474.320, RSMo 1986; *Cunningham v. Kinnerk*, 230 Mo.App. 749, 74 S.W.2d 1107 (1934). Accordingly, a statute enacted after the will is executed and before the testator's death will govern administration of the estate on the theory that the will is ambulatory in nature and does not become effective until the death of the testator. *See*

Hanna and Borron, Probate Law and Practice, Missouri Practice, § 313, p. 350, 2d ed. 1988.

■ A Missouri court administering the estate of a Missouri domiciliary does not apply Kansas law as to the compensation of the personal representative, nor as to the authority of the personal representative, even though the will was executed in Kansas (unless the testator specifically expressed such an intention). Instead, Missouri law will be applied. There is no contention that the testator "intended" to adopt Kansas law. It also could not be supposed that a Missouri court would allocate the burden of *state* inheritance tax according to Kansas law. To allocate the burden of *Missouri* tax according to *Kansas* law would be manifestly bizarre. Nor do we allow the testator's supposed "intent" to pay Kansas inheritance tax rather than Missouri tax to keep the personal representative from paying Missouri estate tax. The law does not assume an "intent" to adopt Kansas law as to these items, nor should the law assume an "intent" to adopt Kansas law as to the burden of taxation.

■ Moreover, there are many problems with attempting to discover the testator's desire as to the burden of taxation by supposing an "intent" to adopt state law. Often a substantial portion of a taxable estate may consist of assets which are not probate assets. Such is true in this case, where the trust established by Harry La-Frenz was taxed at Ada's death by virtue of her power of appointment. Under 26 U.S.C. § 2207, the burden of the tax in a trust which is included by virtue of decedent's power of appointment is to be equitably apportioned.[4] If she had established her own inter vivos trust, however, in the State of Missouri, complications could be presented in determining her intention as to the burden of taxation as to the trust assets. Is it to be supposed that the allocation of the tax burden as to the

---

4. Appellant argues that the Respondent Bank is estopped from arguing that the "burden on the residue" rule applies because in August, 1989, the Bank sought an order allowing the bank to apportion taxes between the trust and the probate estate. Since Marie Gellerstedt is the only residuary beneficiary who benefits from the trust

as a result of decedent's exercise of her power of appointment, there is nothing inconsistent between allocation of the burden between the trust and the probate estate, and allocation of the burden to the residue. Hence, we conclude that the bank is not estopped from arguing that the burden should fall on the residue.

trust assets would be controlled by Missouri law, while the allocation of the tax burden as to the probate assets would be controlled by Kansas law? Does the execution of a will in one state show an "intent" to adopt the law of that state as to all taxable assets, even those not controlled by the will? These questions illustrate that attempts to determine the testator's intent according to the testator's silence are fraught with difficulty.

*Cases Involving Allocation of the Burden*

Other jurisdictions which have considered similar issues related to allocating the estate tax burden have chosen to look to the domicile at death. In one case, for instance, a Florida court decided that Florida law should be applied in determining the allocation of the estate tax burden even though the will in that case (which was silent as to the burden of the tax) had been executed in New York. *In re Bernays' Estate*, 150 Fla. 414, 7 So.2d 444 (1942). In another case involving similar facts, a New York court which was asked to determine the allocation of the estate tax burden elected to apply the law of Florida, the testator's domicile, rather than the law of New York, the situs of the trust property and the place where the trust was established. *In re Gato's Estate*, 276 A.D. 651, 97 N.Y.S.2d 171 (1950). Although in neither case was it clear from the factual recitations that the decedent had actually been *domiciled* in New York at the time the will was executed, there is no indication from the opinions that if such fact had been true it would have been considered material.

We conclude that since there is nothing to be construed, and no question as to the testator's intent before this court, the domicile at the time of death should control the allocation of the burden of federal estate taxation. Our holding in this case is limited to the issue of the burden of federal estate taxation. We purport to decide no other issue.

Although the law of the domicile at death should ordinarily control the allocation of the estate tax burden, such law should not be blindly and mechanically applied. It may be that in some cases the application of the law of domicile at death would produce an absurd and inequitable result, or one that clearly would have been abhorrent to the testator. This could occur, for instance, where the non-probate taxable assets are so substantial that a decision to allow the burden to fall on the residue would completely consume the residue. In such cases, if logic and reason indicate the testator would have abhorred such a result, then a different rule should be applied. Scott, Scott on Trusts § 576 at 210–14 (4th ed. 1989).

In this case, neither party has attempted to argue that the allocation of the burden in either fashion would produce a result which would have been abhorrent to Mrs. LaFrenz. We have no basis to conclude that either equitable apportionment of the burden or placing the burden on the residue would be clearly incompatible with Mrs. LaFrenz's estate planning objectives. Whatever incompatibility is to be considered must be manifest—not a matter of speculation. Since in this case no incompatibility is manifest, we look to the law of the domicile at death in determining the burden.

There is, however, one fact issue remaining in this case. Although we have assumed for purposes of argument that Mrs. LaFrenz was domiciled in Missouri at her death, the trial court did not resolve that issue, concluding that Mrs. LaFrenz's domicile at death was immaterial. Since the parties do not agree concerning this issue, and the facts are not conclusive about whether Mrs. LaFrenz ever intended to adopt Missouri as her domicile, the case must be remanded for specific findings on that issue. The fact that earlier probate proceedings, including the proceedings for the appointment of a guardian, refer to Missouri as Mrs. LaFrenz's permanent residence, does not resolve the issue.[5] What must be determined

5. Since United Missouri Bank was acting as personal representative of the decedent's estate, and not as exclusive agent for the particular beneficiaries in question, at the time such statements were made, the Bank is not estopped from arguing that Mrs. LaFrenz never changed her domicile to Missouri. The parties other than Ms. Gellerstedt who will ultimately be affected by the resolution of this matter include Roy Moore, Larry Moore, and the personal representative of the estate of Marie Kaufman. Since those beneficiaries did not control the Bank's actions in

is whether Mrs. LaFrenz adopted Missouri as her domicile. In this case, if the circumstantial evidence does not establish that Mrs. LaFrenz had both the capacity and the intention to adopt Missouri as her permanent residence, then Kansas should be treated as though it were the domicile at death for purposes of allocating the burden of the federal estate tax. *See* Restatement (Second), Conflict of Laws §§ 17, 18 (1971); § 472.-010(10) RSMo 1986. On remand, the trial court is to determine specifically whether Mrs. LaFrenz ever adopted Missouri as her domicile. If not, the court should apply Kansas law in allocating the burden. If so, Missouri law should be applied.

The judgment of the trial court is reversed. The case is remanded to the trial court for further proceedings consistent with this opinion.

All concur.

---

describing Ms. Gellerstedt's domicile, they will not be barred by the Bank's actions. 28 Am. Jur.2d *Estoppel and Waiver* § 39 (1966). More-

over, estoppel will not be applied where to do so would be inequitable to the real parties in interest.