In the **ESTATE OF Rose M. MAHER, Donald G. Stubbs, Administrator Ad Litem and Michael Ireland, Trustee and Eugene P. Mitchell, Trustee, Appellants,**

v.

**Jo Ann NADON, Respondent.**

**No. WD 48962.**

Missouri Court of Appeals, Western District.

Aug. 23, 1994.

Marie Gockel, Donald Stubbs, Kansas City, for appellants.

Maurice O'Sullivan, Jr., Kansas City, Benjamin J. Neill, Overland Park, for respondent.

Before ELLIS, P.J., and BERREY and SMART, JJ.

---

**2.** This point is raised pro se by appellant at his request.

BERREY, Judge.

Co-appellant, Donald G. Stubbs, as Administrator Ad Litem for the probate estate of Rose M. Maher, filed a Petition for Will Construction, Declaratory Judgment and Other Relief in the Jackson County, Missouri Circuit Court, Probate Division on August 13, 1992. The petition sought a construction of the Will and Restated Trust regarding John P. and Dolores Gaffney and respondent's liability for a proportionate share of the estate taxes due as a result of Mrs. Maher's death. The Gaffneys agreed to be bound by the final results of the claim against respondent. This appeal is confined to respondent Jo Ann Nadon only.

This appeal derives from an Order to Confirm Orders, Judgments and Decrees of Commissioner dated January 18, 1994, entered by Circuit Court Judge John A. Borron, Jr., Probate Division, Jackson County, Missouri, which confirmed a judgment dated January 10, 1994, entered by Commissioner Valarie S. Zeeck, Probate Division, Jackson County, Missouri. The January 10, 1994, judgment confirmed by an order, dated December 20, 1993, and entered by Judge Borron, granting respondent's motion for summary judgment and denying appellants' motion for partial summary judgment as against respondent on the issue of respondent's liability for estate taxes owed as a result of the inclusion of joint bank accounts in the estate of Rose M. Maher.

### Will and Restated Trust of Rose M. Maher

On April 16, 1985, Mrs. Maher executed both her Last Will and Testament and a Restated Trust Agreement. Mrs. Maher died on December 17, 1991, at the age of 91. Mrs. Maher's husband, Raymond A. Maher, died on March 8, 1984. He had served as president and director of Ray A. Maher Enterprises, Inc., a Georgia corporation. After his death, Mrs. Maher served in the same capacities until her death.

Mrs. Maher added two codicils to her Will. The first codicil revoked Article III of her Will, which provided that Mrs. Maher did not intend to exercise the power of appointment granted to her under the terms of a trust, as amended, of Mr. Maher. Mrs. Maher provided that the power of appointment granted to her by the terms of her husband's trust was to be exercised, upon her death, in favor of the Restated Trust.

The second codicil amended Article II of the Will to provide for a specific devise to James Maher [1] of a sum sufficient to discharge any indebtedness owed by him to Ray A. Maher Enterprises, Inc., or any subsidiaries thereof, at the time of Mrs. Maher's death. The second codicil also amended Article II of the document by adding an in terrorem clause.

Mrs. Maher's Will addresses the payment of estate taxes in Article 1, and states:

> I authorize and direct my Personal Representative to pay out of my Estate all lawful claims, funeral and burial expenses and, without right of reimbursement, all estate, inheritance, legacy, succession or transfer taxes (including any interest and penalties thereon), imposed by any domestic or foreign laws with respect to all property taxable under such laws by reason of my death, whether or not such property passes under this Will and whether such taxes be payable by my Estate or by any recipient of any such property, as part of the expenses of the administration thereof, except (a) any tax imposed because I am considered a "deemed transferor," as defined in the Internal Revenue Code; or (b) any tax imposed on any Qualified Terminal Interest Property as defined in the Internal Revenue Code, held in trust for my benefit.

On September 18, 1979, Mrs. Maher executed a revocable trust agreement (1979 Trust Agreement), as grantor, with Mrs. Maher, Raymond A. Maher, William E. Nadon, John P. Gaffney, and Dolores Gaffney, serving as trustees. The 1979 Trust Agreement was amended on December 12, 1979, and on June 8, 1982. On April 16, 1985, the 1979 Trust Agreement was restated by Mrs. Maher, as grantor, and by Mrs. Maher, William E. Nadon, John P. Gaffney, Dolores A. Gaffney, and Michael Ireland, as trustees, and is referred to as the "Restated Trust."

1. No relation to Mrs. Maher or Raymond A. Maher.

Mrs. Maher's Restated Trust addresses payment of estate taxes in Article VIII, and states:

*If the assets of Grantor's Estate should be insufficient to satisfy Grantor's debts, ex*penses of administration and any *estate, inheritance, legacy, succession and transfer taxes,* including penalties or interest thereon which are to be paid by Grantor's Estate under the terms of Grantor's Will or otherwise, and any other lawful charges against Grantor's Estate, *the Trustees shall distribute to Grantor's Personal Representative* or may pay directly to the appropriate creditors or taxing authorities *the difference between the amount required for such purposes and the amount available therefor in Grantor's Estate.* The Trustees may rely, without inquiry, upon the written statement of Grantor's Personal Representative as to the amount of such debts, expenses, taxes and charges and the assets available for payment thereof. The Trustees may distribute such amount at one time or in installments and need not seek contribution from any source.

In the event that there should be no administration of Grantor's Estate, *the Trustees are directed to pay all estate, inheritance, succession and transfer taxes which become payable by reason of Grantor's death,* except (a) any tax imposed because the Grantor is considered a "deemed transferor," as defined in the Internal Revenue Code; or (b) any tax imposed on any Qualified Terminable Interest Property, as defined in the Internal Revenue Code, held in trust for the benefit of the Grantor. The Trustees may pay Grantor's debts and the expenses of Grantor's last illness, funeral and burial claims which are filed with the Trustees by the appropriate creditors within six (6) months after Grantor's death. The decision of the Trustees as to the validity of such taxes, debts and expenses shall be binding upon all beneficiaries of the Trust. To the extent possible, payment shall be made from the Trust and the Trustees may delay distribution of Trust principal to beneficiaries until the entire amount to be paid, under this Article VIII, shall have been provided for. (emphasis added).

### Assets of Estate and Trust

When Mrs. Maher created her 1979 Trust Agreement on September 18, 1979, her assets consisted primarily of 19,990 shares of common stock in Ray A. Maher Enterprises, Inc., which were transferred to the trust. These shares remained in Mrs. Maher's revocable trust until her death. Mrs. Maher's Federal Estate Tax Return reported a total value of Ray A. Maher Enterprises, Inc. of $7,867,854.42 as of the date of her death.

On September 18, 1979, Raymond A. Maher, Mrs. Maher's husband, also executed a trust agreement, which was subsequently amended three times before his death. Until his death, Mr. Maher's trust owned 89,510 shares of common stock in Ray A. Maher Enterprises, Inc. After Mr. Maher's death, as per the terms in his trust documents, 28,121 shares of the 89,510 shares of Ray A. Maher Enterprises, Inc. were used to fund a sub-trust designated as the Raymond A. Maher First Marital Trust. The balance of the 89,510 shares, (61,389 shares) funded a separate sub-trust designated as the Raymond A. Maher Second Marital Trust. The Second Marital Trust was a Qualified Terminal Interest Property (Q–TIP) Trust.

Mrs. Maher established in her First Codicil a power of appointment over the First Marital Trust assets. As such, at her death, the assets of the First Marital Trust, the 28,121 shares of Ray A. Maher Enterprises, Inc. stock, previously owned by the First Marital Trust, were paid over to the Restated Trust. As a result of the transaction, only two shareholders of Ray A. Maher Enterprises, Inc. remained. The Restated Trust, which owned 48,111 shares, and the Second Marital (Q–TIP) Trust, which owned 61,389 shares.

The value of Mrs. Maher's probate estate totalled $11,515.30, while the value of Mrs. Maher's assets under the Restated Trust were substantial. The value of the assets in the First Marital Trust, which were paid to the Restated Trust upon Mrs. Maher's death, was $2,380,463. The total value of the assets

in the Restated Trust, exclusive of the First Marital Trust, was $2,175,746.[2]

One week before Mrs. Maher's death, an investment account held individually by her was transferred to the Restated Trust. The investment account was valued at $741,463 as of Mrs. Maher's date of death. The value of Mrs. Maher's probate estate ($11,515.30) would have been much greater if not for the transfer.

Taxes paid as a result of Mrs. Maher's death were $4,889,440. The taxes owed as a result of the inclusion of the Q–TIP Trust in the federal estate were $2,312,950. Reducing the total tax liability by the amount of tax caused by the inclusion of the Q–TIP Trust, results in a difference of $2,576,490.

According to the terms of the Will and Restated Trust, the assets of the probate estate are to be exhausted for payment of taxes before contribution for the taxes is sought from the Restated Trust.

### Creation of Joint Bank Accounts

In 1984, after Mr. Maher's death, but prior to the execution of her Will and Restated Trust, Mrs. Maher transferred an existing bank account from her individual name to her name jointly with respondent. The account balance as of January 14, 1985, was $29,594.67.

In September of 1985, Mrs. Maher informed her attorney that respondent, Jo Ann Nadon, was to be placed on some bank accounts at Boatmen's Bank. On September 30, 1985, Mrs. Maher executed the First Codicil to her Will and at the same time discussed with her attorney, David Alig, placing respondent's name on the bank accounts. On October 1, 1985, respondent informed Mr. Alig that respondent was to be added to a bank account at Home Savings Association. Shortly thereafter, the accounts were transferred into Mrs. Maher and respondent's joint names. The balances of the joint accounts, excluding the joint account created in 1984, totalled $89,644.36. At the time of her death, the balances of the joint accounts totalled $770,208.22.

### Calculation of Proportionate Share of Estate Taxes

As previously stated, the total estate taxes due as a result of Mrs. Maher's death was $4,889,440. There were insufficient assets in the probate estate to pay the taxes, nor were there sufficient liquid funds in the Restated Trust to pay the taxes. The Second Marital (Q–TIP) Trust paid $2,312,950 to the Restated Trust as its proportionate share of the estate taxes. The Restated Trust initially paid the estate tax liability, including those taxes appellants' claim are allocable to the assets received by respondent and by John and Dolores Gaffney, in addition to the taxes due as a result of the assets in the Rose Maher Trust, the Rose Maher Estate, and the First Marital Trust.

After deducting certain expenses paid by respondent following Mrs. Maher's death, the value of the property received by respondents was $766,473.00. Respondents received 7.747% of the taxable value of all assets includable in the gross estate. ($766,473 $9,893,527 = 7.747%) Appellants calculate respondent's share of the tax liability by multiplying respondent's proportionate share of the taxable assets (7.747%) by the total estate tax liability ($4,889,440), to equal the sum of $378,784.92. On September 17, 1992, the trustees of the Restated Trust made a written demand upon respondent to pay the sum of $378,784.92 as her share of taxes.

Appellants raise two points on appeal. Point I alleges the trial court erred in granting summary judgment in favor of respondent because Article I of the Last Will and Testament and Article VIII of the Restated Trust Agreement of Rose M. Maher do not express, much less clearly express, the intended ultimate liability for payment of federal estate taxes. Appellant asserts in the absence of a clearly expressed intent as to the ultimate payment of estate taxes, the doctrine of equitable apportionment applies. Point II alleges the trial court erred in not granting summary judgment in favor of appellants in the principal sum of $378,784.92, together with interest, as respondent's proportionate share of the total estate taxes incurred and paid for by the Restated Trust.

---

**2.** Values are pursuant to the federal estate tax     return.

We do not address Point II as our discussion of appellants' first point will resolve the dispute.

Appellants' brief fails to comply with Rule 84.04. The argument portion of appellants' brief does not "substantially follow the order of 'Points Relied On.'" Rule 84.04(a)(4) and Rule 84.04(e). The points relied on also fail to comply with the rule, as they fail to "state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous ..." Rule 84.04(d). Appellants' numerous points and subpoints collectively allege trial court error in its holding that the estate taxes were due by the estate or trust and not by respondent through equitable apportionment. Nevertheless, we have labored through appellants' points relied on and argument and address them as succinctly as possible.

The trial court granted summary judgment in favor of respondent and denied summary judgment in favor of the appellants as "the testator's intent can be determined from the documents at issue." The court concluded that the decedent's intent was that no estate taxes were to be apportioned against the joint property held by the respondent. Appellants' assert that the doctrine of equitable apportionment applies.

Our Supreme Court has limited the context in which the equitable apportionment doctrine applies. In *In re Estate of Boder*, 850 S.W.2d 76, 78 (Mo. banc 1993), the court stated:

> ... Missouri courts look first to the decedent's testamentary instruments to discern the decedent's intent ... Where the testator fails to express his or her intent, the court applies equitable principles in determining the ultimate burden of death duties.

The *Boder* court further provided "that courts will follow the doctrine of equitable apportionment only when the testator's intent cannot be determined." 850 S.W.2d at 79.

Mrs. Maher's intent as to the payment of taxes was expressed in her Will and Restated Trust. The Missouri Supreme Court provid-

ed the means of construing the intent of the testator in *Boder* where it stated:

> In determining the grantor or testator's intent, the instrument or instruments in question must be construed as a whole. If the grantor or testator's intent clearly appears, it is to be given effect ... The finding of an ambiguity necessitates judicial construction for the purpose of determining the testator's directive, if possible, before application of equitable apportionment ... Provisions are to be harmonized when possible and construed in the light of the purposes and general scheme of the grantor and testator. 850 S.W.2d at 79.

*Boder* provides no presumption that equitable apportionment is to be applied to overcome the testator's intent as reflected in the language of the applicable testamentary instruments.

In the present case, Article I of the Will directs the personal representative to pay from estate assets all estate taxes as to property which is taxable under the estate tax laws, including jointly held property. The documents direct that the taxes be paid as to any property, whether or not the property passes under the Will, with two non-relevant exceptions. In conjunction with the Will, the Restated Trust then provides for the trust to pay "... the difference between the amount required for such purposes and the amount available in Grantor's [Mrs. Maher's] estate."

Mrs. Maher's continuous and extensive estate planning involved the Restated Trust and Will. She first placed the tax burden on the probate estate, with two exceptions not relevant here, and then, if the probate estate was unable to pay the taxes, the decedent placed the burden on the Restated Trust. The direction to pay taxes under the Will extends to any property "whether or not such property passes under this Will." If Mrs. Maher had intended for the joint accounts to have taxes apportioned to them, the Will and Restated Trust could have expressly stated that the taxes should be equitably apportioned among those beneficiaries who received any benefit from her estate.

Appellants argue that the language of the documents pertain to the initial allocation of taxes, and not to the ultimate burden. Ap-

pellants then argue that the documents are not clear as to what property should pay the tax liability, and therefore, the doctrine of equitable apportionment should apply. Article I of the Will provides, "I authorize and direct my Personal Representative to pay out of my Estate ... all estate taxes ... imposed ... with respect to all property taxable under such law by reason of my death, whether or not such property passes under this Will and whether such taxes be payable by my Estate or by any recipient of any such property ..." The Restated Trust then provides "... the Trustees shall distribute to Grantor's Personal Representative or may pay directly to the appropriate ... taxing authorities the difference between the amount required for such purposes and the amount available therefor in Grantor's Estate." The language of the documents clearly provide for both the initial and ultimate burden of tax liability.

In *Commerce Trust Company v. Starling,* 393 S.W.2d 489 (Mo.1965), the court dealt with tax apportionment under a trust. The trust contained a provision providing for the initial allocation of taxes and then contained a more specific provision providing for the allocation of the tax burden. The court held that in construing instruments, more specific language will govern over general language. In the present case, we do not have both general and specific language as to the allocation of taxes, as the language of the Will and Restated Trust deal specifically with both the initial and ultimate allocation of the tax burden.

Article I of Mrs. Maher's Will and the second paragraph of Article VIII of the Restated Trust are clear in directing the payment of all estate taxes, on all property. The judgment of the trial court is affirmed.

All concur.