The CENTRAL TRUST BANK,
Respondent,

v.

Judith Ann SCRIVNER and Virginia
Pritzel, Appellants,

and

Janice Brandhorst, Steve Ortmeyer and
Beverly Schwartz, Respondents.

No. WD 53880.

Missouri Court of Appeals,
Western District.

Jan. 13, 1998.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 3, 1998.

Application to Transfer Denied
April 21, 1998.

John E. Beetem, Hearne, Nicholaus, Green & Beetem, Jefferson City, for appellants.

Thomas A. Vetter, Matthew A. Clement, Cook, Vetter, Doerhoff & Landwehr, Jefferson City, for respondents.

Before ULRICH, C.J.,P.J. and HANNA and ELLIS, JJ.

ELLIS, Judge.

On September 6, 1991, Mrs. Helen Haverkortt executed a nine page trust document entitled, "Helen H. Haverkortt Trust," naming herself as Trustee. The same day, Mrs. Haverkortt executed a warranty deed conveying her home to the Trust and a will bequeathing her estate to the Trust. Mrs. Haverkortt expressly reserved the right to change, alter or amend the Trust during her lifetime, by written agreement executed by her and delivered to the Trustee. All assets held in the Trust were identified on page nine of the Trust document, which was entitled "Schedule A." Pursuant to the terms of the Trust, the assets were to be distributed upon Mrs. Haverkortt's death, as follows: (a) a sum of $1,000 to her church, (b) one sixth of the trust assets to each of her five nieces and nephews, and (c) one eighteenth of the trust assets to each of her three great nieces.

On August 17, 1995, Mrs. Haverkortt resigned as Trustee and delivered the Trust document to the Successor Trustee, The Central Trust Bank. Mrs. Haverkortt died on March 21, 1996. Several days after her death, a handwritten document entitled, "Schedule B," was discovered in Mrs. Haverkortt's home. The document, dated October 6, 1991, and bearing the page number 10, bequeathed certain property to Mrs. Haverkortt's nieces and nephews. Schedule B provided in relevant part:

> In accordance with RSMo 474.333 (effective 1/1/81) and Article V of the Helen H. Haverkortt Trust, I hereby give and bequeath unto the following persons, the personal property listed after their names:
>
> Since my home is "personal property", at the time of my demise, if I still have and own my property at 206 Donald Drive, **I would like to have this sold and the money to be divided between Virginia Pritzel and Judith Ann Scrivner.**[1]
>
> \* \* \* \*
>
> Balance of fine jewelry & crystal to be sold at a private sale for nieces & nephews mentioned in Living Trust.

(emphasis added). A dispute arose between the beneficiaries regarding these directives because of an apparent conflict with the distributive provisions of Article V of the Trust, which provided in relevant part:

> This written statement or list, (hereinafter designated Schedule "B", attached hereto) which the Grantor will date and sign and in which list the Grantor will describe the items and the persons to whom the Grantor gives said items ... **shall not be used to give, bequeath, or dispose of money,** evidences of indebtedness, documents of title, securities, real property used in a trade or business, and no contrary con-

---

1. Virginia Pritzel and Judith Ann Scrivner are two of Mrs. Haverkortt's nieces.

struction should be made of said written statement or list.

(emphasis added).

In an effort to resolve the conflict between these provisions, the Successor Trustee filed a petition in the Probate Division of the Circuit Court of Cole County, requesting that the court construe the Trust document. On October 30, 1996, the Probate Court entered its findings of fact, conclusions of law and judgment, declaring that the bequeaths of the directives in Schedule B were void and of no force and effect due to their conflict with Article V of the Trust. In so holding, the court specifically found that Schedule B was not an amendment to the Trust document, and was merely an effort to dispose of the specified items of property. Nieces, Judith Ann Scrivner and Virginia Pritzel (Appellants), appeal from the court's order.

Appellants' sole point on appeal challenges the court's invalidation of the directive relative to Mrs. Haverkortt's home. Appellants contend the court was obligated to reconcile any conflicting instructions according to Mrs. Haverkortt's intent, that it erred in failing to do so, and that its ultimate construction of the provision was against the weight of the evidence. Appellants claim they adduced evidence to explain the special relationship between Mrs. Haverkortt and Appellants and establish her intent.

■ The trial court's judgment is presumed valid. *Delaney v. Gibson*, 639 S.W.2d 601, 604 (Mo. banc 1982). We will reverse only if the judgment is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *In re Estate of Strick*, 934 S.W.2d 312, 314 (Mo.App. E.D.1996). The appellant carries the burden of demonstrating the incorrectness of the judgment. *In re McDonald Revocable Trust*, 942 S.W.2d 926, 932 (Mo.App. S.D.1997).

■ Missouri courts generally apply the same rules for construing both trusts and wills. *Lehr v. Collier*, 909 S.W.2d 717, 723

(Mo.App. S.D.1995). Where, as here, the trust and will form parts of the same plan, they must be construed together. *Id.* The grantor's intent controls when construing the meaning of a trust provision. *Marvin F. Hall Trust v. Hall*, 810 S.W.2d 710, 714 (Mo.App. S.D.1991). In determining the grantor's intent, we consider the entire trust instrument; no single clause or word is given undue preference. *Id.* The grantor is presumed to know and intend the legal effect of the language used. *In re Nelson*, 926 S.W.2d 707, 709 (Mo.App. S.D.1996). The words used must be given their usual, ordinary and natural meaning, unless a contrary meaning appears in the instrument. *Lehr v. Collier*, 909 S.W.2d at 723.

■ The court is required to give meaning to the entire instrument, avoiding repugnancies, if possible, and to adopt a construction which reconciles rather than creates inconsistencies. *Boatmen's Trust Co. v. Sugden*, 827 S.W.2d 249, 253 (Mo.App.E.D.1992). As stated by our Supreme Court:

It is our task here to find the general purpose of the [grantor], to reconcile and coordinate provisions which may appear to be in conflict where such reconciliation and coordination can reasonably be made consistent with the general purpose, and, if the [grantor] was confused in the expression of his desires, to pierce through such confusion and reduce to articulate terms the underlying intent.

*Id.* at 253–54 (quoting *Coleman v. Haworth*, 320 Mo. 852, 8 S.W.2d 931, 932–33 (1928)).

■ A thorough examination of the Trust instrument reveals that Mrs. Haverkortt intended that Schedule B be utilized to dispose of only those items of personal property which would be permitted to be disposed of in a written statement or list referenced in a will, § 474.333.[2] This intent is unequivocally expressed in Article V of the Trust document:

Subsequent to the execution of this trust, the Grantor **intends** to prepare a written

---

**2.** Section 474.333 provides:

A will may refer to a written statement or list to dispose of items of tangible personal property not otherwise specifically disposed of by the

will, other than money, evidences of indebtedness, documents of title, securities and property used in trade or business....

statement or list similar to the type authorized by Section 474.333 of the Revised Statutes of Missouri which is **intended** by the Grantor to create a gift of certain items of tangible personal property not otherwise referred to in this trust to be effective upon the death of the Grantor.... The Grantor **intends** that said written statement or list shall not be used to give, bequeath, or dispose of money, evidences of indebtedness, documents of title, securities, real property used in a trade or business, and no contrary construction should be made of said written statement or list. Accordingly, it is the Grantor's **intention** that said written statement or list only dispose of those items of personal property which would be permitted by Section 474.333 RSMo. Such list may be considered as an amendment to this Trust, but only with respect to those items of personal property described therein.

(emphasis added). Her intent is again evinced in the language of Schedule B:

In accordance with RSMo 474.333 (effective 1/1/81) and Article V of the Helen H. Haverkortt Trust, I hereby give and bequeath unto the following persons, the personal property listed after their names: ... NOTE: This form may not be used to give land, money, securities, etc. This form may be used only to give personal property, for example, silver, china, furniture, jewelry, etc.

Appellants, nonetheless, argue that the directive regarding the sale and disposition of Mrs. Haverkortt's home amended the original terms of the Trust. We disagree. Article V provides that Schedule B may be considered an amendment to the Trust "only with respect to those items of personal property described therein." Schedule B operates to amend the provisions of the Trust only to the extent that it disposes of personal property which would otherwise make up the corpus of the Trust and be distributed according to the provisions of Article X.[3] The terms of the Trust expressly and unequivo-

cally limit the scope of Schedule B to those items of personal property authorized by § 474.333. Moreover, the Trust instrument expressly prohibits a construction of Schedule B that is contrary to Mrs. Haverkortt's intent that it not be used to give, bequeath, or dispose of money, evidences of indebtedness, documents of title, securities, or real property used in a trade or business. Accordingly, the trial court did not err in finding that the directive in Schedule B regarding the sale of Mrs. Haverkortt's home and the distribution of the proceeds therefrom was void and of no force or effect.

The judgment is affirmed.

All concur.

---

3. Article X provides for the following distribution of the Trust assets: $1,000 to Mrs. Haverkortt's church, one sixth to each of her five nieces and nephews, and one eighteenth to each of her three great nieces