SHRINERS HOSPITAL FOR CHILDREN and Cardinal Glennon Childrens Hospital, Respondents/Cross–Appellants,

v.

Lester SCHAPER and Rosemary M. Schaper, Appellants/Cross–Respondents.

No. ED 87672.

Missouri Court of Appeals, Eastern District, Division Four.

Nov. 28, 2006.

Application for Transfer Denied March 20, 2007.

Daniel P. Card II, Jefferson City, Stuart Lawrence Oelbaum, co-counsel, St. Louis, for Lester and Rosemary Schaper.

Theodore Dennis Dearing, Clayton, for Shriners Hospitals for Children and Cardinal Glennon Children's Hospital.

Dale Eugene Cope, Troy, for Pets–A–Lone Sanctuary of Lincoln County.

Raymond Terrence Mueller, Clayton, for The Humane Society of Missouri.

John M. McIlroy Jr., Bowling Green, for Gerald Fox.

Mary V. Schaper, Warrenton, pro se.

William Winfield Cheeseman Sr., Troy, for Charles Ray Schulze.

Nancy McDaris, Hartville, pro se.

John T. Bruere, Troy, for Raymond Fieth.

SHERRI B. SULLIVAN, J.

*Introduction*

Lester F. Schaper (Successor Trustee) appeals from the trial court's grant of summary judgment to Shriners' Hospital for Children and Cardinal Glennon Children's Hospital (collectively referred to as "Hospitals") in Hospitals' action for equitable relief in regard to a Living Trust (Trust) established by Anna V. Schulze (Grantor). Hospitals cross-appeal,[1] challenging the trial court's denial of prejudgment interest. We reverse and remand.

*Background*

Grantor died on January 19, 2002. The United States Estate tax return filed on behalf of her estate showed a total gross estate of $1,638,391. A farm, which Grantor devised to Successor Trustee, comprised $1,180,000 of the gross estate's value.

Hospitals initiated this action concerning the Trust on January 16, 2004, against Successor Trustee, Rosemary M. Schaper, Jerald Fox, Mary V. Schaper, Charles Ray Schulze, Nancy McDaris, Raymond Fieth, Pets–A–Lone Sanctuary of Lincoln County, and the Humane Society (collectively referred to as "Primary Beneficiaries"), originally filing a petition with three counts: 1) accounting (against Successor Trustee only); 2) breach of fiduciary duty (against Successor Trustee only); and 3) unjust enrichment (against Primary Beneficiaries). Successor Trustee and Rosemary Schaper filed their answer on April 14, 2004. On August 6, 2004, Hospitals filed their motion for summary judgment.

On September 8, Successor Trustee filed his response to the summary judgment motion, in which he indicated that he would seek a court order to have Dan Dildine (Dildine), the attorney who drafted Grantor's Trust, testify for the purpose of ascertaining Grantor's intent as to the payment of estate taxes. In an affidavit submitted with his response, Successor Trustee stated that he was 74 years of age, his highest level of education was high school, and his work history consisted of service with the Navy, and employment at his family's general store and a lumberyard. Successor Trustee further stated that he had had no experience as a trustee or personal representative, and had asked an accountant to prepare the estate tax return. The accountant, after conferring with Successor Trustee's lawyer, prepared and gave Successor Trustee the completed return and a list of distributions to make from the Trust assets in accordance with the return.

On January 4, 2005, Successor Trustee filed an amended federal estate tax return, with an accompanying note to the Internal Revenue Service explaining that: 1) a suit had been filed against Successor Trustee and the other Trust beneficiaries, alleging improper calculation of the remainder distribution to Hospitals; 2) the amended return incorporated in part the alternate tax calculation proposed by Hospitals; and 3) because the suit was still pending, the final distribution of assets could change. The amended return, showing charitable, public and similar gifts and bequests totaling $305,972 (of which $132,986 was attributed to each hospital), resulted in a federal estate tax refund of $95,049. A Missouri Estate/Generation–Skipping Credit Tax Return filed on January 4, 2005, resulted in a refund of $11,764.

On January 21, 2005, Successor Trustee moved for leave to file a Counterclaim and

1. On the Court's own motion, Hospitals' cross-appeal, ED87643 has been consolidated with Appeal No. ED87672.

Cross–Claim for Reformation of Trust. Thereafter, on February 14, 2005, the trial court granted a motion by Successor Trustee to waive attorney-client privilege and ordered Dildine to testify and produce documents as to communications he had with Grantor regarding her estate plan.

In his deposition filed with the trial court on April 27, 2005, Dildine testified that Grantor had been approached by a relative with a proposal regarding some of her property. Because she was worried that this relative would try to "sweet-talk" her out of her property, Grantor talked with Successor Trustee, a person that she trusted thoroughly. Successor Trustee then contacted Dildine to assist Grantor with her estate planning.

In 1996, Dildine prepared a Last Will and Testament (Will) and a Living Trust Agreement (Trust) for Grantor in accordance with her wishes. He and Grantor discussed Grantor's assets, with land being her major asset. She valued her 460 acres of farmland, half of which was in a floodplain, at $460,000. In the Trust, Grantor named the Hospitals as residuary beneficiaries. Grantor anticipated that each of the hospitals would receive approximately $30,000.

Dildine and Grantor did not discuss estate taxes "too much" because at the time the Will and Trust were prepared, they estimated the total value of her estate at $720,000 and did not believe they would encounter an estate tax problem. Dildine does not recall whether they discussed the possibility of someone paying estate taxes and he did not draft specific terms in the Trust concerning where the burden of the estate tax would fall. When Dildine and Grantor discussed expenses, Grantor's plan was to leave payment of expenses up to Successor Trustee because she trusted him to "take care of things" and "she did not see any need to worry about it in detail at that point."

During the deposition, Dildine was told that Successor Trustee: first, made distributions according to the Trust of Grantor's farm property and tangible personal property; then, distributed $20,000 to Pets–A-lone of Lincoln County and $20,000 to the Humane Society; next, paid approximately $240,000 in estate taxes; and then, paid the remaining amount to Hospitals, each of which received approximately $10,450. When questioned as to his opinion of Successor Trustee's actions, Dildine stated that he believed Successor Trustee's actions conformed to Grantor's wishes and intent.

On June 16, 2005, the trial court granted partial summary judgment to Hospitals on their third count, concluding that the doctrine of equitable apportionment applied to the case, and denied summary judgment on Hospitals' first two counts. The trial court stated that additional evidence was required to show the proportional share of estate taxes as to each defendant beneficiary. It denied Successor Trustee's Motion for leave to file a Counterclaim.

Subsequently, the trial court entered a final judgment on November 23, 2005, modifying the June 16 judgment. In the November 23 judgment, the trial court entered judgment on Hospitals' third count in favor of Hospitals and against Primary Beneficiaries as follows:

| | |
|---|---|
| Lester Schaper | $232,966 |
| Gerald Fox | 1,760 |
| Mary Schaper | 894 |
| Charles Schulze | 894 |
| Nancy McDaris | 866 |
| Raymond Fieth | 4,834 |

The trial court also: 1) granted Hospitals' request to dismiss their first count with prejudice; 2) entered judgment in favor of Primary Beneficiaries on the second count; 3) entered judgment in favor of Pets–A-Lone Sanctuary of Lincoln County and

The Humane Society, stating that Hospitals should recover nothing from them; 4) denied Hospitals' request for prejudgment interest; and 5) ordered Successor Trustee to disburse certain tax refunds totaling $106,812 to Hospitals in equal shares, stating that when such amounts were paid they should be offset against the judgment entered against Successor Trustee on the third count.

Successor Trustee filed a Motion to Set Aside Judgment and Other Relief, which was denied on February 1, 2006. This timely appeal follows.

### Points on Appeal

Successor Trustee raises two points on appeal, claiming: 1) the trial court erred in entering summary judgment for Hospitals because the provisions of the Trust, when read as a whole and construed in *pari materia*, reflect Grantor's intent to vest discretion in Successor Trustee as to how estate taxes were to be allocated among the beneficiaries, and the trial court erroneously declared and applied the law with respect to the doctrine of equitable apportionment; and 2) the trial court erred in refusing to permit Successor Trustee leave to file a Counterclaim for Reformation of the Trust.

In their cross-appeal, Hospitals claim the trial court erred in failing to award them prejudgment interest because the primary beneficiaries received distributions to which they were not entitled and which they failed to return after demand.

### Standard of Review

We review *de novo* a grant of summary judgment, viewing the record in the light most favorable to the party against whom the judgment was entered. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).

### Discussion

In his first point on appeal, Successor Trustee claims the trial court erred in granting summary judgment to Hospitals because the Trust provisions, when read as a whole and construed in *pari materia*, reflect Grantor's intent to vest discretion in Successor Trustee as to how estate taxes were to be allocated among the beneficiaries and the trial court erroneously declared and applied the law with respect to the doctrine of equitable apportionment.

■ Although federal law requires the estate tax on the gross estate to be paid out of the whole estate, state law actually governs the apportionment of the taxes. *Estate of Cohen v. Crown*, 954 S.W.2d 409, 412 (Mo.App. E.D.1997). Thus, we look to Missouri law to determine how the tax burden shall be distributed among the Trust's beneficiaries.

■ Because Missouri has no apportionment statute addressing the ultimate burden of federal estate tax, our courts first look to the decedent's testamentary instruments in order to discern the decedent's intent. *In re Estate of Boder*, 850 S.W.2d 76, 78 (Mo. banc 1993). The doctrine of equitable apportionment, which causes the property generating the federal estate tax to bear the estate's tax burden and exonerates from the burden the property that does not, is only appropriate to apply when the grantor's intent cannot be ascertained. *Estate of Cohen*, 954 S.W.2d at 413.

■ Therefore, before undertaking to apply Missouri's doctrine of equitable apportionment, we examine the record to determine if it contains a clearly expressed intention on Grantor's part as to how the estate taxes were to be borne. The testamentary instruments in the record before us consist of Grantor's Will and Trust. Where a trust and will form parts of the

same plan, they must be construed together. *Central Trust Bank v. Scrivner*, 963 S.W.2d 383, 385 (Mo.App. W.D.1998). In determining the decedent's intent, the instruments in question must be construed as a whole. *Estate of Boder*, 850 S.W.2d at 79. If the decedent's intent clearly appears, it is to be given effect. *Id.* If ambiguity is found, judicial construction is required. *Id.* Provisions of instruments are to be harmonized when possible and construed in light of the purposes and scheme of the decedent. *Id.*

In her Will, Grantor devised and bequeathed her entire estate and effects to the Trust. She nominated Successor Trustee as her Personal Representative and directed that all of her legally enforceable debts be paid as soon after her death as practicable.[2] She expressly authorized and empowered him "without application to or order of any probate or other court, to sell, transfer and convey said property, real or personal, belonging to my estate for such purposes and at such times and for such amounts and upon such terms as my Personal Representative may deem appropriate." As all of Grantor's testamentary gifts passed through her Trust, we next look to its directives to determine further her plan and intention.

In her Trust, Grantor specifically directed that upon her death Successor Trustee should: 1) honor instructions with respect to gifts made in a written statement prepared pursuant to Section 474.333 RSMo 2000; 2) transfer all real estate owned by the trust, including all household goods, furnishings, and other personalty located thereon to Successor Trustee; 3) distribute $20,000 to Pets–A–Lone Sanctuary of

Lincoln County; 4) distribute $20,000 to The Humane Society of Missouri; and 5) give all the rest, residue and remainder of the Trust assets to Hospitals in equal shares. In the event Successor Trustee died before the Trust assets were distributed, his bequests were to be distributed to his lineal descendants per stirpes. We find it significant that Grantor's first four bequests were specific.

Hospitals argue that the various paragraphs of Grantor's Trust do not prove the intent of Grantor regarding payment of the federal estate taxes because they do not refer to estate taxes and have nothing to do with the payment of estate taxes. Of course, Grantor could have expressly provided in her testamentary instruments where the burden of the federal estate tax should fall, and then there would be no need for construction. Because Grantor did not do so, we must decide this case on what she did say, which involves interpreting her Will and Trust. *See St. Louis Union Trust Co. v. Krueger*, 377 S.W.2d 303, 304 (Mo. banc 1964).

In *Estate of Cohen v. Crown*, 954 S.W.2d 409 (Mo.App. E.D.1997), this court, construing a will to determine the testator's intent regarding apportionment of estate taxes, determined that the will excluded specific and general legatees from paying a pro rata share of estate taxes. In *Cohen*, the testator provided in his will that upon his wife's death the principal of a trust should be distributed to certain individuals and charitable organizations. *Id.* at 411. After all the specific bequests had been made from the trust's principal, the testator left the remainder to four charitable organizations. *Id.* The testator specifi-

---

**2.** Hospitals, citing to *Estate of Johnson*, 803 S.W.2d 619, 620 (Mo.App. E.D.1991), contend that this language does not include federal estate taxes. We need not address this argument, as the Grantor devised and bequeathed her entire estate and effects to the Trust. The terms of distribution to which we look to determine Grantor's intent are contained in the Trust.

cally provided that in the event his wife should predecease him, the residuary legacy should not go into a trust but should be distributed in the same manner as was originally planned for the trust's principal after his wife's death. *Id.* The testator's wife did predecease him, and the personal representatives petitioned the court to construe the will to determine the testator's intent regarding the apportionment of estate taxes. *Id.* In *Cohen,* this court had to reconcile the testator's directions as to specific bequests and disbursement of his residuary estate with an instruction to his personal representative to pay estate taxes "without reimbursement or contribution." *Id.* at 413. This court examined the entire will and determined that, considering the specific bequest of a home, along with specific monetary bequests made to various general legatees, were combined with that instruction, "it becomes evident Testator intended each beneficiary take the specific item or specific monetary amount without requiring contribution or reimbursement for taxes." *Id.* This court concluded the doctrine of equitable apportionment was not applicable because the Testator intended the specific and general legatees to take without paying estate taxes. *Id.*

We find also instructive *St. Louis Union Trust Co. v. Krueger,* 377 S.W.2d 303 (Mo. banc 1964), which involved estate executors seeking a determination as to whether certain claims, including one for federal estate tax, had to be deducted from the testatrix's estate before computing the amount of one-half of her estate to go under her will to the estate of her husband, who died thirteen months after her death. In that case also, the testatrix did not expressly provide in her will where the burden of the federal estate tax and other claims or charges should fall, so the Missouri Supreme Court examined her will to ascertain her intent. *Id.* at 304. Interest-

ingly, in that case, the Court rejected the approach taken by the trial court here, which was to determine which of the beneficiaries under the will should bear the burden of the various charges and claims against and expenses of the estate. *Id.* at 304, 306.

In construing the testatrix's will, the Court presumed that the testatrix, as an adult person mentally capable of managing her affairs and making her will, knew that the various charges imposed by law against her estate would have to be paid before her designated legatees could be paid their bequests. *Id.* at 304–05. The Court observed that the amount of the estate for the purposes of division between legatees could not be determined until after the various charges against the estate were ascertained, and concluded that, absent the testatrix's express direction, it was reasonable to assume that she intended the federal estate taxes to be paid from her gross estate and the bequests to be effective only as to the net or distributable estate remaining after payment of the various charges imposed by law. *Id.* at 305. The Court rejected the argument of husband's executors that husband's bequest should not be reduced by any portion of the federal estate tax except as to property he received which contributed to or caused a part of the tax. *Id.* at 304, 306. The Court found the wording of the provision bequeathing one-half of the testatrix's estate to her husband, or in the event of her husband predeceasing her, to the testatrix's nephew, strongly indicative that her husband's share would be one-half of her net estate available for distribution after payment of all debts, claims, administration expenses, taxes, including federal estate taxes, and other lawful charges: "I hereby give and bequeath my said husband's share to my nephew, Walter Conrad Schmidt." *Id.* at 306. Because the

testatrix made no distinction between the share to go to her husband if he outlived her and the share to go to her nephew if her husband predeceased her, the Court found that the portion of her estate devised was intended to be the same in either occurrence. *Id. See also Cohen*, 954 S.W.2d at 413 (issue of the taxable status of residuary legatees is immaterial when determining testators' intent).

■ We likewise presume that Grantor, as an adult person mentally capable of managing her affairs and making her Will and Trust, knew that the various charges imposed by law against her estate would have to be paid before her designated beneficiaries could be paid their bequests. Unlike the testatrix in *St. Louis Union Trust*, here, Grantor made a definite distinction between the specific bequests and the residual gifts. In her directive concerning her gifts to Successor Trustee, Grantor stated that if Successor Trustee died before the Trust assets were distributed, his bequests were to be distributed to his lineal descendants per stirpes. This directive clearly indicates Grantor's intention that these specific bequests remain intact and not become part of the residuary estate. Our examination of Grantor's Trust reveals that an important element of Grantor's testamentary plan was to ensure that Successor Trustee or his heirs receive her farm and personal effects and that her instructions with respect to specific gifts to Primary Beneficiaries listed in her written statement were honored. Accordingly, we conclude Grantor's intent was that these specific bequests not be reduced pro rata for payment of estate taxes.

Hospitals urge the holding in *In re Estate of Wahlin*, 505 S.W.2d 99 (Mo.App. W.D.1973), requires the result reached by the trial court. *Wahlin*, however, is distinguishable in that the issue before the court was which *residuary* legatees should bear the burden of federal estate tax. *Id.* at 101. Here, the only residuary beneficiaries are Hospitals. To apportion the federal estate taxes in the manner in which the trial court did has the effect of negating Grantor's specific instructions as to the amount of each bequest the Primary Beneficiaries would receive, clearly not at all what Grantor intended. In construing wills and trusts, we are "required to give meaning to the entire testamentary scheme, avoiding repugnancies, if possible, and to adopt a construction which reconciles rather than creates inconsistencies." *Central Trust Bank*, 963 S.W.2d at 385.

The amount of Grantor's trust assets remaining—the residue—for the purposes of division between the Hospitals could not be determined until after the various charges against the estate were ascertained and the specific bequests distributed. Accordingly, we conclude that, absent Grantor's express direction, it was reasonable to assume that she intended the federal estate taxes to be paid from her gross estate and the residuary bequests to be effective only as to the net or distributable estate remaining after payment of the various charges imposed by law and the distribution of specific bequests.

Furthermore, the language employed by Grantor strongly indicates that she intended Trustee to enjoy great discretion in his administration and distribution of the Trust assets. Grantor stated that Successor Trustee should have all of the powers granted by then Sections 456.500 through 456.600 RSMo 2000,[3] and, as well, those

---

**3.** Sections 456.500 through 456.600 were repealed by L.2004, H.B. No. 1511, Section A. However, at the time of Grantor's death, these statutes provided, as relevant, that Trustee would have the power:

powers described in Section 473.810 RSMo 2000.[4] Among those conferred on Successor Trustee by Section 456.520(20) RSMo 2000, was the power to pay taxes and other expenses incurred in the collection, care, administration, and protection of the trust; and Section 473.810(11) RSMo 2004 likewise authorized him, in his personal representative role, to pay taxes incident to the administration of the estate.

In Article VII of the Trust, Grantor granted to Successor Trustee without restriction after her death the power:

K. To compromise, settle, arbitrate, or release any and all debts, liens, claims or other obligations which may be due to the trust or which may be a liability of the trust.

In addition to the other powers granted to Successor Trustee, Grantor declared that the surviving designated beneficiaries' shares could be considered as "undivided equitable interests in the entire principal of the trust estate" by the Successor Trustee:

... it being the GRANTOR's intention that [Successor Trustee] have the discretion to administer said shares as though one single trust only, and not as separate trusts for the several beneficia-

ries of this trust. Alternatively, [Successor Trustee] may establish separate trusts for the beneficiaries hereof, in [Successor Trustee's] discretion.

Given the discretion Grantor afforded Successor Trustee in his administration and distribution of the Trust assets and the language Grantor employed in making her bequests, we conclude the trial court erred in entering summary judgment for Hospitals. Because the Grantor's testamentary instruments, when construed as a whole, clearly show Grantor's intent, the doctrine of equitable apportionment is inapplicable. *Id.* at 306.

Successor Trustee's first point is granted. Upon remand, the trial court shall determine the Hospitals' proportional shares of the trust assets available for distribution after payment of all debts, claims, administration expenses, taxes, including federal estate taxes, and other lawful charges.

In light of our holding on Successor Trustee's first point, we need not address his second point. Our disposition of this appeal renders Cross–Appellant's point regarding prejudgment interest moot as well.

(20) To pay taxes, assessment, compensation of the trustee, and other expenses incurred in the collection, care, administration, and protection of the trust;

\* \* \*

(23) To effect distribution of property and money in divided or undivided interests and to adjust resulting differences in valuation;

\* \* \*

(29) To divide any trust, before or after its initial funding, into two or more separate trusts and to make payments of distributions that are authorized by or directed in the governing instrument from any one or more of such separate trusts.

Section 456.520 RSMo 2000.

**4.** Section 473.810 RSMo 2004, provides, in pertinent part:

Except as restricted or otherwise provided by the will, an independent personal representative, acting reasonably for the benefit of the interested persons, may properly:

\* \* \*

(11) Pay taxes, assessments, compensation of the independent personal representative, and other expenses incident to the administration of the estate;

\* \* \*

(14) Employ persons, including attorneys, ... investment advisors, or agents, to advise or assist the independent personal representative in the performance of his administrative duties; act without independent investigation upon their recommendations ....

(20) Satisfy and settle claims, and distribute the estate, as provided in this code.

*Conclusion*

The judgment of the trial court is reversed and remanded for proceedings in accordance with this opinion.

ROY L. RICHTER, P.J., and KATHIANNE KNAUP CRANE, J., concur.