

*In the*

*Missouri Court of Appeals*

*Western District*

IN THE MATTER OF THE ESTATE OF
M. STANLEY GINN, DECEASED,
NANCY ALMOND, PERSONAL
REPRESENTATIVE (ADMINISTRATOR
DE BONIS NON) AND INDIVIDUALLY,

        **Appellant,**

v.

**CARRIE ALMOND, ET AL.,**

        **Respondents.**

**WD76552**

**OPINION FILED:**

**April 15, 2014**

---

**Appeal from the Circuit Court of Chariton County, Missouri
The Honorable Andrea Ravens Vandeloecht, Judge**

**Before Division Four: James Edward Welsh, C.J.,
Joseph M. Ellis, J., and Mary R. Russell, Sp. J.**

At issue in this case is the construction of M. Stanley Ginn's will as to where the burden of paying the estate taxes should lie. Ginn's daughter, Appellant Nancy Almond ("Almond"), filed a petition for will construction seeking application of the doctrine of equitable apportionment, which burdens the property that generates estate taxes with the payment of those taxes. The circuit court granted summary judgment in favor of the Respondents (Ginn's grandchildren) on Almond's counts pertaining to equitable apportionment, finding that the testator's intent was for the estate taxes to be paid by the residuary estate. We affirm.

**Background**

Ginn, a widower, died on April 16, 2003, leaving a substantial estate. On May 9, 2003, Ginn's will (which he executed in 1999) and a first and second codicil (both executed in 2000) were admitted to probate. The will made certain specific devises to Ginn's only two children (Nancy Almond and Sally Hood) and to his five grandchildren (Carrie, Callie, Christopher, and Carl Almond, and Elizabeth Hood Lynn). It then disposed of the remainder of his estate under the following clause:

> . . . and after payment of all expenses and taxes of my estate, an amount of $600,000.00 present worth to Sally Hood and, the remainder to Nancy Almond.

In accordance with Ginn's instructions, his granddaughter, Carrie Almond, was appointed personal representative of his estate. In December 2003, Ginn's daughter, Nancy Almond, was appointed personal representative (administrator *de bonis non*) after Carrie[1] resigned.

Except for a few non-probate transfers of jointly owned property, the vast majority of Ginn's assets passed through probate under his will. The total gross estate reported on the federal estate tax return was well over $17 million. The record shows that the estate had sufficient funds from which to pay federal estate taxes of over $7 million, Missouri estate taxes of over $1 million, and Florida estate taxes of about $13,000, without contribution from the beneficiaries of the specific devises. After payment of the estate taxes and distribution of the specific devises, Nancy Almond, the sole beneficiary of the residuary estate, received probate distributions in excess of $5 million.[2]

---

[1]We refer to family members by their first names for ease of reference only. No disrespect or familiarity is intended.

[2]The federal estate tax return lists the individuals who received benefits from the estate, as follows: Nancy Almond received $5,460,146; Sally Hood received $1,063,268; Carrie Almond received $2,248,083; Carl, Christopher, and Callie Almond each received $159,000; and Elizabeth Hood Lynn received $36,957.

In April 2004, Almond petitioned the Chariton County Circuit Court for construction of the will. She sought application of the doctrine of equitable apportionment as to the estate taxes. The circuit court appointed the Honorable Robert Russell, a retired circuit court judge, as administrator *ad litem* to make determinations on issues about which Almond has a conflict of interest, including equitable apportionment. Judge Russell, as administrator *ad litem*, determined that equitable apportionment did not apply, and he declined to take any action to recover any estate taxes from the beneficiaries of the specific devises.

Almond then filed an amended six-count petition for will construction in October 2008, again asking the circuit court to determine, *inter alia*, the testator's intent as to who should pay the estate taxes. She argued that because the will did not specifically articulate the testator's intent, equitable apportionment should apply and the individual beneficiaries should reimburse the estate for the taxes attributable to their devises.[3] The Respondents (the Almond grandchildren) sought a judgment on the pleadings as to the equitable apportionment issue. In an Order and Judgment dated September 16, 2009, the circuit court determined that equitable apportionment did not apply. This court dismissed Almond's appeal of that judgment on the basis that the ruling was not appealable in that it did not dispose of all the claims. *In re Estate of Ginn*, 323 S.W.3d 860 (Mo. App. 2010).

Following remand, Almond's petition again came before the circuit court. (At this point, Judge Vandeloecht had succeeded the Honorable Michael L. Midyett.) The Respondents moved for partial summary judgment on the equitable apportionment claims in Counts II and III. Almond filed a cross-motion for summary judgment. The motions were fully briefed, and the

---

[3]In April 2007, the IRS notified Nancy Almond, as personal representative, of a deficiency (in the amount of $504,923) with respect to Ginn's federal estate tax return. Almond's appeal to the United States Tax Court was pending as of the date of this appeal.

court heard oral arguments. On March 29, 2013, the circuit court granted the Respondents a partial summary judgment, finding that they are entitled to their specific bequests without contribution for the estate taxes paid from the residuary estate. Almond voluntarily dismissed two of her counts, and the circuit court held an evidentiary hearing on the remaining counts.[4] The court entered judgment in favor of the Respondents as to all counts on May 29, 2013.

Almond appeals. She contends that the circuit court erred as a matter of law in granting summary judgment in favor of the Respondents on her counts for equitable apportionment as to the federal estate taxes.[5]

**Discussion**

Our review of a summary judgment is *de novo*. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We review the record in the light most favorable to the party against whom judgment was entered, and we afford that party the benefit of all reasonable inferences. *Id.* "The propriety of summary judgment is purely an issue of law." *Id.* We will affirm the circuit court's grant of summary judgment if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Id.* at 380; Rule 74.04. Where the question is the construction of a will based upon the language that it employs, that, too, is an issue of law which we review *de novo*. *See Estate of Boder*, 850 S.W.2d 76, 79 (Mo. banc 1993).

---

[4]After the voluntary dismissal of Counts I and IV and the summary judgment on Counts II and III, only Counts V and VI (claims against Carrie related to her conduct as Ginn's attorney-in-fact) remained to be decided.

[5]Almond does not contest the denial of Counts V or VI in her brief and, thus, has abandoned those claims. *See State ex rel. Lake of the Ozarks Cmty. Coll. Steering Comm. v. Coordinating Bd. for Higher Educ.*, 802 S.W.2d 533, 534 (Mo. App. 1991); Rule 84.04(d). We do not review abandoned issues. *Id.* Almond also does not raise the issue of equitable apportionment as to the Missouri or Florida estate taxes in her point relied on, but that issue is settled by our determination herein that the testator's intent was for the taxes to be paid out of the residuary estate.

At issue in this case is who bears the burden of federal estate taxes. While federal law mandates that estate tax on the gross estate be paid "out of the whole estate," *Shriners Hospital for Children v. Schaper*, 215 S.W.3d 185, 189 (Mo. App. 2006), state law governs the "ultimate thrust of the tax and who should bear the burden of it." *Boder*, 850 S.W.2d at 78 (citing *Riggs v. Del Drago*, 317 U.S. 95, 98 (1942)). "Because Missouri has no apportionment statute addressing the ultimate burden of federal estate tax, our courts first look to the . . . testamentary instruments in order to discern the decedent's intent." *Shriners Hosp.*, 215 S.W.3d at 189 (citing *Boder*, 850 S.W.2d at 78). The doctrine of equitable apportionment, which imposes the burden of paying estate taxes on the property that generates the tax and exonerates the property which does not, is appropriately applied *only* if the court cannot determine the testator's intent. *Boder*, 850 S.W.2d at 78-79; *Estate of Cohen v. Crown*, 954 S.W.2d 409, 413 (Mo. App. 1997). In *Estate of Maher v. Nadon*, we cited *Boder* for the proposition that "Missouri courts look first to the decedent's testamentary instruments to discern the decedent's intent" and "will follow the doctrine of equitable apportionment only when the testator's intent cannot be determined." 881 S.W.2d 665, 669 (Mo. App. 1994) (quoting *Boder*, 850 S.W.2d at 79). Thus, before attempting to apply the doctrine of equitable apportionment, we examine the testamentary instruments to determine if there is a clearly expressed intention on the testator's part as to how the estate taxes were to be paid. *Shriners Hosp.*, 215 S.W.3d at 189.

Almond raises multiple arguments and cites various cases in support of her claim that the doctrine of equitable apportionment is applicable because, she contends, the will does not reveal

any intent as to who should bear the burden of the federal estate tax.[6] She argues, for example, that the reference to "taxes" in the will is simply an instruction as to *when* the estate taxes should be paid and not *who* should pay them and that, because many of Ginn's specific bequests will incur federal generation-skipping transfer taxes,[7] it defies common sense to suggest that he would not also have intended for them to incur federal estate taxes. Almond cites *In re Estate of Wahlin*, 505 S.W.2d 99, 106 (Mo. App. 1973), for the proposition that the existence of specific bequests does not automatically place the burden of taxes on the residue. She also asserts that the reference to taxes in Ginn's will is equivalent to the tax language in *In re Estate of Mapes*, 681 S.W.2d 476, 478 (Mo. App. 1984), which this court found did not indicate the testator's intent as to the payment of federal estate taxes.

We find Almond's arguments and her analogies to other cases unpersuasive. In the first instance, "as is always true in cases involving construction of wills and trust instruments, unless the cited cases contain clauses whose language is *so similar as to be in effect the same language* in question, the authorities are valuable only as stating general rules and principles." *Old Folks Home of St. Louis Cnty. v. Saint Louis Union Trust Co*., 313 S.W.2d 671, 680 (Mo. 1958) (emphasis added). Neither *Mapes*, nor any of the other cases cited by Almond, contain clauses

---

[6]The Respondents interpret Almond's argument as espousing a presumption in favor of equitable apportionment absent a clear expression to the contrary in the will. They observe that our Supreme Court rejected the idea of such a presumption when it stated in *Boder*: "The teaching of the cases is that courts will follow the doctrine of equitable apportionment **only** when the testator's intent cannot be determined." 850 S.W.2d at 79 n. 1 (emphasis added); *see also Maher*, 881 S.W.2d at 669 ("*Boder* provides no presumption that equitable apportionment is to be applied to overcome the testator's intent as reflected in the language of the applicable testamentary instruments.").

[7]See § 2603(b) of the Internal Revenue Code as to generation-skipping transfer taxes. 26 U.S.C. § 2603(b).

so similar to Ginn's "as to be in effect the same language."[8]  Further, in order to determine the

testator's intent, we need decide only what the will means.  *See St. Louis Union Trust Co. v.*

*Krueger,* 377 S.W.2d 303, 306 (Mo. banc 1964).  "[W]hen that meaning is decided there is

nothing else to consider because the will governs."  *Id*.  Thus, we look to the four corners of the

testamentary instruments.  *Boder*, 850 S.W.2d at 80.

Article I of Ginn's will "direct[s] the payment of all my lawful debts and the expenses of

my last illness and funeral, as soon as practicable after my death."  Article II provides as follows:

> II.  Subject to my handwritten statement found with this Will making disposition
> of stated personal items to particular persons as authorized by Sec. 474.333
> RSMo, I give, devise and bequeath all of my estate, real, personal and mixed,
> wheresoever situated (having made adequate provision for my wife, Rosemary
> Ginn, should she survive me) as follows:
>
> > A.  My Commerce Bank stock as follows:
> >
> > > 1.  One Thousand (1,000) shares to Elizabeth Hood Lynn,
> > >     individually; and
> > >
> > > 2.  The remainder thereof in equal shares to:  Nancy Almond and
> > >     Carrie Almond.
> >
> > B.  My Ginn Farms, Inc. shares in equal shares to:  Nancy Almond and
> > Carrie Almond.

Article II of the Will, *as modified by the First Codicil*, inserted the following devise to Carrie

Almond in paragraph C.:

> > C.  The following two tracts of real estate are given to Carrie Almond, to-
> > wit:
> >
> > > 1.  All of the South Half (S 1/2) of Section Three (3), in Township
> > >     Fifty-seven (57), of Range Twenty-one (21), Linn County,
> > >     Missouri; subject to:  (1) the Right-of-way of U.S. Highway
> > >     36, and (2) Locust Creek Drainage District; and

---

[8]Moreover, both *Mapes*, 681 S.W.2d 476, and *Wahlin*, 505 S.W.2d 99, are distinguishable on their facts, and both were decided prior to our Supreme Court's most recent examination of equitable apportionment in *Boder*.

2. All that part of the North Half (N 1/2) of Section Thirty-six (36), in Township Sixty (60), of Range Nineteen (19), Linn County, Missouri, which lies to the East of a Supplementary State Highway designated as Route CC.

Article II, *as modified by the Second Codicil*, inserted the following devises to Ginn's grandchildren, Carl, Callie, Carrie, and Christopher Almond, and to his daughter, Nancy Almond, in paragraph D.:

D. The following two tracts of real estate, being unproductive in our family corporation they have been repurchased therefrom by me, to wit:

1. All that part of the Northwest Quarter (NW 1/4) of Section Thirty-two (32) which lies South and West of Piney Fork of the Gasconade River; all that part of the Northeast Quarter of Section Thirty-two (32), which lies South and West of Piney Fork of the Gasconade River; all that part of the Southeast Quarter (SE 1/4) of Section Thirty-two (32) which lies South and East of Piney Fork of the Gasconade River; and all that part of Section Thirty-three (33) which lies South and West of Piney Fork of the Gasconade River; all in Township Thirty-four (34) North, Range Ten (10) West of the Fifth Principal Meridian, in Pulaski County, Missouri; and

2. All of the West fractional Half (Wfrac 1/2) of the Northwest Quarter (NW 1/4) of Section Four (4); the Northwest fractional Quarter (NWfrac 1/4) of the Southwest Quarter (SW 1/4) of Section Four (4); the Northeast Quarter (NE 1/4) of the Southeast Quarter (SE 1/4) of Section Five (5); all in Township Thirty-three (33) North, Range Ten (10) West, Texas County, Missouri; and

Said two tracts of land [referred to by the parties as the "Piney River" property] shall be distributed by and from my estate to Nancy Almond, Carl Almond, Callie Almond, Carrie Almond and Christopher Almond as joint tenants and not as tenants in common.

The final paragraph of Article II provides:

E. Any and all loans to my grandchildren shall be evidenced by notes which will be found in my estate, each of which shall be first distributed to the parent of that grandchild; and *after payment of all expenses and taxes*

*of my estate,* an amount of $600,000.00 present worth to Sally Hood and, [sic] the remainder to Nancy Almond.

(Emphasis added.) Article III nominates Carrie Almond to serve as the personal representative, and for Nancy Almond to serve as personal representative if Carrie fails to serve.

Based upon the language and construction of the will, and on Missouri caselaw regarding equitable apportionment, the circuit court granted the Respondents' motion for summary judgment after finding that: "The intent of M. Stanley Ginn is clear that the taxes shall be paid by the residuary, therefore equitable apportionment is not applied." As stated, our review of this matter is *de novo*. *See ITT*, 854 S.W.2d at 376; *Boder*, 850 S.W.2d at 79. We need give no deference to the circuit court's judgment, "because the sole question is the construction of the documents based upon the language they employ." *Boder*, 850 S.W.2d at 79. Nevertheless, we concur with the circuit court's judgment in this case and find it to be based upon sound reasoning. We adopt portions of Judge Vandeloecht's opinion without further attribution.

Article II contains the dispositive provisions of the will and the tax language at issue here: "and after payment of all expenses and taxes of my estate[.]" While these words, in themselves, are clear in their meaning, we also look to the placement of the language in determining the testator's intent. *See, e.g., Krueger,* 377 S.W.2d at 305-06; *Estate of Cohen*, 954 S.W.2d at 412-13. Significantly, the tax language in Article II is placed *after* the specific devises to be distributed to the various beneficiaries and *before* the instruction to pay the specific sum of $600,000 to Sally Hood and to distribute the remainder to Nancy Almond.

The provisions of the testamentary instruments must be viewed as a whole in order to determine the testator's intent. *Boder*, 850 S.W.2d at 79-80. Here, the testamentary instruments consist of the original will (executed on October 26, 1999) and the first and second codicils

9

(executed on May 11, 2000, and December 7, 2000, respectively). We find the placement of the two codicils also to be highly indicative of Ginn's intent. Both codicils specifically direct how they are to be incorporated into the will. The first codicil states:

Article II. is hereby modified to provide:

1. Part C. thereof shall be relettered Part D.; and

2. A new Part C. shall be inserted to read as follows:

"C. [text of the bequest]."

The second codicil similarly instructs that:

Article II. is hereby modified to provide:

1. Part D. thereof, as relettered by my First Codicil, shall be further relettered Part E.; and

2. A new Part D. shall be inserted to read as follows:

"D. [text of the bequest]."

After the insertion of the two codicils specifically designated as paragraphs C. and D., the paragraph that contains the directions for the payment of taxes (which was originally designated paragraph C.) ultimately ended up being re-designated paragraph E., thus remaining the final paragraph in Article II. Ginn did not alter his instructions as to the payment of taxes in either of the codicils. In fact, the dispositions he made in those codicils *were inserted in the list ahead of the tax language set forth in the original will*. This shows a "definite distinction between the specific bequests and the residual gifts" and an intent to pay the taxes only after the specific bequests have been made. *See Shriners Hosp.*, 215 S.W.3d at 192.

Furthermore, despite a provision in Article I that directs payment of debts, last illness, and funeral expenses, the direction for payment of *taxes* is found only in the last paragraph in

10

Article II, making it clear that the testator intended the payment of taxes out of the residue only after all other dispositions previously identified. Viewed as a whole, the provisions of the codicils and the language and placement of paragraph E. clearly show Ginn's intent with regard to where payment of the estate taxes rests, thus, the doctrine of equitable apportionment is inapplicable. *See id*. at 193. Ginn's will clearly conveys his intent to first make some specific devises to his daughters and grandchildren, then to pay all expenses and taxes out of the estate, and then to dispose of the remainder by leaving a specific bequest of $600,000 to Sally and then the remainder to Nancy.[9]

The nature of Ginn's specific bequests also conveys his intent that the burden of the estate taxes fall on the residue and not on the specific devises. The specific devise of his Piney River property to Nancy, Carrie, Callie, Carl, and Christopher Almond, without leaving any other assets to Callie, Carl, and Christopher from which to pay estate taxes on their share of that property (which Ginn recognized in his will as being "unproductive "), shows that making the grandchildren pay the taxes on their Piney River devises was contrary to his intent. The same is true of his bequest of 1,000 shares of Commerce Bank stock to Elizabeth, which was his sole bequest to her. Additionally, the bequest of that stock to Elizabeth in the specific quantity of 1,000 shares indicates that Ginn intended for those shares to be conferred free of any tax burden, as does his specific bequest of "$600,000 present worth" to Sally. *See, e.g., Estate of Cohen*, 954 S.W.2d at 413.

If the testator's intent clearly appears, it is to be given effect. *Old Folks Home*, 313 S.W.2d at 678. Giving effect to the specific language providing for payment of "all expenses

---

[9]Despite our *de novo* standard of review, we find it not insignificant that Judges Russell, Midyett, and Vandeloecht all have examined the language in Ginn's will and all have reached this same conclusion.

11

and taxes of my estate," and giving due consideration to Ginn's overarching testamentary plan, we conclude that he intended for the ultimate burden of federal estate taxes to be borne by the residue and not by the beneficiaries of the specific devises. Ginn is entitled to have his clearly conveyed intentions enforced.

### Conclusion

The circuit court did not err in granting summary judgment in favor of the Respondents on Almond's Counts II and III because the doctrine of equitable apportionment does not apply. We affirm the circuit court's judgment.

/s/ JAMES EDWARD WELSH
James Edward Welsh, Chief Judge

All concur.

12